**Albert LeFRANC et al.**

v.

**AMICA MUTUAL INSURANCE COMPANY et al.**

**No. 90–242–Appeal.**

Supreme Court of Rhode Island.

July 23, 1991.

Stephen M. Rappoport, Rappoport, Audette, Bazar & Farley, East Providence, for plaintiffs.

Amy G. David, Hanson, Curran, Parks & Whitman, Providence, for defendants.

## OPINION

KELLEHER, Justice.

The plaintiffs in this dispute, Albert and Eileen LeFranc (the LeFrancs), are appealing the grant by a Superior Court justice of the defendants' motions for summary judgment.

The record indicates that on September 10, 1986, plaintiff Albert was a passenger in his motor vehicle that was operated by his wife, plaintiff Eileen. At the time the LeFrancs were insured by defendant Amica Mutual Insurance Company (Amica).

On that date the LeFrancs' vehicle was involved in an automobile collision with a vehicle operated by Catherine Daniels (Daniels). The LeFrancs describe Daniels's vehicle as "underinsured." As a consequence they are seeking benefits pursuant to Rhode Island's uninsured motorist stat-ute, G.L.1956 (1989 Reenactment) § 27–7–2.1. That statute, as it existed at the time the LeFrancs filed their complaint, defined an underinsured motorist as "the owner or operator of a motor vehicle who carries automobile liability insurance with coverage in an amount less than the limits or damages that persons insured pursuant to this section are legally entitled to recover because of bodily injury, sickness, or disease, including death resulting therefrom."

At some point subsequent to the collision Daniels filed a complaint against Eileen in the Superior Court of the Commonwealth of Massachusetts, seeking damages for injuries allegedly suffered as a result of the collision. The LeFrancs then filed claims against Daniels for their personal injuries. On July 28, 1988, the LeFrancs both signed a release discharging their claims against Daniels in consideration of $10,000 paid to them by Daniels's insurer.

On March 16, 1989, the LeFrancs filed a complaint in the Superior Court of Rhode Island under their policy against Amica, seeking underinsured-motorist benefits. They also filed a claim against Amica's claims manager. The LeFrancs claimed that they were entitled to recover from Amica all sums in excess of Daniels's policy limit. In joining the claims manager as a defendant, the LeFrancs maintain that he owed them a duty to exercise good faith in the handling of their claim pursuant to the insurance policy and that he had breached such duty.

For their part, Amica and its claims manager deny any liability arising from this controversy. Amica rests its rejection of the LeFrancs' claim on the fact that the LeFrancs had settled their claim with Daniels and therefore are precluded from bringing a claim against their underinsurance carrier pursuant to our holding in *Gosselin v. Automobile Club Insurance Co.*, 574 A.2d 1243 (R.I.1990).

In that litigation the plaintiffs, the Gosselins, were involved in an automobile collision with another motorist, Elliot. The Gosselins were insured by Automobile Club Insurance (Auto Club) under a policy that

provided coverage for "uninsured/under-insured motorist protection." As in the case before us, after settling their claims with Elliot's insurer, the Gosselins made a demand against Auto Club for benefits under the underinsured-motorist section of their policy. Auto Club refused to make payments to the plaintiffs on any of their claims arguing, as Amica does here, that the underinsured coverage was not available to them.

On appeal we first determined that if the tortfeasor's liability-policy limit was less than the actual amount of damages sustained by the insured, which the insured was legally entitled to recover from the tortfeasor, then the tortfeasor was an underinsured motorist as defined in § 27–7–2.1(B). *Gosselin*, 574 A.2d at 1245. We then ruled that once an insured settles with a tortfeasor, the insured is thereafter precluded from bringing a claim against his or her underinsurance carrier since, by definition, the amount of the settlement is the amount by which the tortfeasor is liable to the insured. *See id.* The insured therefore could not assert a claim against her underinsurance carrier since the tortfeasor's settlement acted to fully compensate the insured for the amount by which the tortfeasor was liable to the insured. *See id.*

Although this portion of *Gosselin* has since been superseded by act of the Legislature,[1] because the events in this litigation transpired prior to the effective date of the statutory amendment, we believe that *Gosselin* is dispositive of the controversy before us. When the LeFrancs settled their claims with Daniels and her insurer, the LeFrancs were fully compensated for Daniels's liability to them and Daniels could not be considered an underinsured motorist. Quite simply, since the LeFrancs had liquidated their damages, they were not legally entitled to recover under the under-insured motorist provision of their policy. Since the LeFrancs' recovery from their underinsurance carrier is precluded by *Gosselin*, we need not address the consent-to-settlement issues raised by the parties.

■ Turning now to the claim filed against the claims manager, we note that G.L.1956 (1985 Reenactment) § 9–1–33(a) provides in its pertinent portion:

"Notwithstanding any law to the contrary, an insured under any insurance policy as set out in the general laws or otherwise may bring an action against the insurer issuing said policy, when it is alleged said insurer wrongfully and in bad faith refused to pay or settle a claim made pursuant to the provisions of said policy, or otherwise wrongfully and in bad faith refused to timely perform its obligations under said contract of insurance."

This language would seem to indicate that the defendants are correct in interpreting this statute to apply only to insurance companies and not to individual employees. The plaintiffs, however, point to this court's decision in *Bitgood v. Allstate Insurance Co.*, 481 A.2d 1001, 1007 (R.I.1984), where this court ruled that a deputy fire marshal could be held personally liable for official acts while acting in bad faith and with malice. However, G.L.1956 (1989 Reenactment) § 23–28.2–17 specifically provides that any fire marshal, acting in good faith and without malice, shall be free from liability for acts performed under any of its provisions or in the performance of his or her official duties. Logically, as the *Bitgood* court noted, if a fire marshal acted

**1.** Public Law 1990, chapter 340, § 1, added the following sentence to G.L.1956 (1989 Reenactment) § 27–7–2.1(B)(2): "Release of the tortfeasor with the consent of the company providing the underinsured coverage shall not extinguish or bar the claim of the insured against the underinsurance carrier regardless of whether the claim has been liquidated." Thus the addition to § 27–7–2.1(B)(2) allows the insured to release the tortfeasor with the consent of the insurance company and may thereafter bring an underinsured-motorist claim against the underinsurance carrier, clearly contrary to our holding in *Gosselin v. Automobile Club Insurance Co.*, 574 A.2d 1243 (R.I.1990). We would also point out that section 2 of P.L.1990, ch. 340 provides that the amendment to § 27–7–2.1 by that Act is effective July 12, 1990, and it is applicable retroactively to May 25, 1990, which is, and we think not coincidentally, the day *Gosselin* was decided.

in bad faith, he or she could be held personally liable. There is no equivalent statute that absolves an insurance company's employee from liability if he or she acts in good faith or, conversely, allows a cause of action if he or she acts in bad faith. Consequently we believe that the language of § 9–1–33 applies only to insurers and not to the insurer's employees.

The plaintiffs' appeal is denied and dismissed, and the judgment appealed from is affirmed.