Barry C. VAILL et al.

v.

Robert FRANKLIN et al.

No. 97–454–Appeal.

Supreme Court of Rhode Island.

Jan. 6, 1999.

Kelly M. Fracassa, Westerly, for plaintiffs.

Stephen A. Izzi, Ian C. Ridlon, Providence, for defendants.

Present WEISBERGER, C.J., LEDERBERG, and BOURCIER, JJ.

## OPINION

PER CURIAM.

This case came before a panel of this court for oral argument October 20, 1998, pursuant to an order that had directed all parties to appear in order to show cause why the issues raised in this appeal should not be summarily decided. After hearing the arguments of counsel and examining the memoranda filed

by the parties, we are of the opinion that cause has not been shown and that the issues raised by this appeal should be decided at this time.

The plaintiffs, Barry C. Vaill (Vaill) and Exeter Enterprises, Inc., d/b/a the Christmas House (hereinafter collectively "plaintiffs"), appeal from the entry of summary judgment as to counts 1, 3 and 4, in favor of the defendants, Robert Franklin (Franklin), personally and in his official capacity as an authority having jurisdiction under G.L.1956 § 23–28.1–5(7), Peter Lacouture (Lacouture), William Mathewson (Mathewson), Wayne Joyal (Joyal), John Does 1 through 4, and the Exeter Volunteer Fire Company No. 2 (hereinafter collectively "defendants").[1]

The following facts are undisputed. The Christmas House is a retail store in Exeter which is owned and operated by Vaill. On the evening of November 26, 1993, the store conducted its annual Christmas tree-lighting ceremony and sales event, which was very well attended. While driving home, defendant, Fire Chief Franklin, noticed the large crowd at the store. Soon after 7:30 p.m., he arrived home to learn that an anonymous caller had called his home, complaining that she had been at the store, that it was extremely overcrowded and dangerous, and that she had left for fear of her own safety. Franklin became concerned because previously, in 1991, he had discovered fire-safety violations as the result of an inspection of the Christmas House and because he had not received the required fire alarm inspection reports for the building as required under the state fire code.

After summoning his officers to the fire station to discuss the alleged hazardous conditions and deciding what, if anything, to do, Fire Chief Franklin proceeded to the store in a small, unmarked fire-department vehicle. His four officers followed in their personal vehicles. Upon arrival, at approximately 8:30 p.m., Franklin directed his officers to deny access into or out of the store, while he and officer Joyal went inside to videotape the

scene, count the number of occupants, and conduct a general fire-safety inspection. Vaill informed Franklin that the fire-alarm system was operating and that he had a contract with P & J Alarms, but a subsequent call to P & J Alarms revealed that no such contract existed. During the course of the ten-to-fifteen minute investigation, Franklin entered a closet containing the fire-alarm system and opened the door to the boiler room. Franklin discovered a number of fire-code violations.

The following day, Franklin returned to the Christmas House to test the fire-alarm system and found it to be in working order. On January 19, 1994, a member of the state fire marshal's office also conducted an inspection of the plaintiffs' premises at Franklin's request and issued a list of six deficiencies.

Subsequently, in May of 1994, plaintiffs commenced this action against the defendants seeking damages pursuant to 42 U.S.C. § 1983, alleging that the defendants had conducted an unreasonable search and seizure in violation of their due process and equal protection rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. The defendants filed a motion for summary judgment, asserting that: (1) G.L.1956 § 23–28.2–20 "is a constitutionally valid regulatory scheme;" (2) the inspection of plaintiffs' premises was not unreasonable under the totality of the circumstances; (3) the inspection was proper because the plaintiffs' premises was not only a retail establishment but was also being used as a "place of assembly;" and (4) they were entitled to qualified immunity because they inspected the plaintiffs' premises with an "objectively good faith belief that this inspection was legal in all respects."

Finding that the "defendants acted generally reasonably under the circumstances," where they "were faced with a complaint that a dangerous situation existed at a building with known fire code violations in which they were unsure the fire-alarm system would

1. In counts 3 and 4, the plaintiffs are also suing Irving J. Owens, the State Fire Marshal and the State of Rhode Island. As to count 3, the Superior Court denied without prejudice the plaintiffs'

motion for partial summary judgment seeking a declaration that G.L.1956 § 23–28.2–20 is unconstitutional. That issue is not presently before this Court.

operate," the trial justice granted the defendants' motion solely on the ground that they were shielded from liability based upon qualified immunity.

On appeal, the plaintiffs raise two claims of error. First, the plaintiffs contend that material facts exist to demonstrate that the defendants' search of their premises was unreasonable where defendants, without a warrant, entered and inspected the Christmas Shop at 8:30 p.m. and prevented people from entering and exiting the premises. Second, they contend that the fire code does not permit the imposition of occupancy restrictions on mercantile business buildings.

This Court has ruled previously that "a deputy fire marshal could be held personally liable for official acts while acting in bad faith and with malice." *LeFranc v. Amica Mutual Insurance Co.*, 594 A.2d 382, 384 (R.I. 1991) (citing *Bitgood v. Allstate Insurance Co.*, 481 A.2d 1001, 1007 (R.I.1984)). However, we also have stated that § 23–28.2–17 "specifically provides that any fire marshal, acting in good faith and without malice, shall be free from liability for acts performed under any of its provisions or in the performance of his or her official duties." *LeFranc*, 594 A.2d at 384.[2]

█ In the matter before us, the officers involved followed orders from their superior officer, Franklin. There is no evidence that these officers acted in bad faith or with malice when they reasonably responded to such orders; therefore, the trial court did not err when it found that the officers were shielded from liability based upon qualified immunity. However, whether Franklin is shielded from liability based upon qualified immunity is dependent on whether the inspection itself was reasonable under the circumstances in this case.

█ "To determine whether the search is reasonable within the meaning of the Fourth Amendment, it is necessary to balance 'the need to search against the invasion which the search entails.'" *Rhode Island Defense Attorneys Association v. Dodd*, 463 A.2d 1370, 1372 (R.I.1983) (quoting *Camara v. Municipal Court*, 387 U.S. 523, 537, 87 S.Ct. 1727, 1735, 18 L.Ed.2d 930, 940 (1967)). "Moreover, it is necessary to inquire about whether the challenged intrusion was reasonably related in scope to the circumstances that justified the interference in the first place." 463 A.2d at 1372 (citing *Terry v. Ohio*, 392 U.S. 1, 19, 88 S.Ct. 1868, 1878, 20 L.Ed.2d 889, 904 (1968)). We have stated previously that "'[s]tate agencies charged with purely administrative responsibilities, just as those engaged in the enforcement of the criminal law, must conduct their investigative and enforcement functions in compliance with constitutional requirements and, more particularly, within the confines of the Fourth Amendment.'" *Board of License Commissioners of Tiverton v. Pastore*, 463 A.2d 161, 164 (R.I. 1983); *see also Camara v. Municipal Court*, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967); *See v. City of Seattle*, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967).

█ The United States Supreme Court has stated that

"The businessman, like the occupant of a residence, has a constitutional right to go about his business free from unreasonable official entries upon his private commercial property. The businessman, too, has that right placed in jeopardy if the decision to enter and inspect for violation of regulatory laws can be made and enforced by the inspector in the field without official authority evidenced by a warrant." *City of Seattle*, 387 U.S. at 543, 87 S.Ct. at 1739, 18 L.Ed.2d at 946.

In *City of Seattle*, the Supreme Court concluded that "warrants are a necessary and a tolerable limitation on the right to enter upon

---

2. Section 23–28.2–17 provides in relevant part:
   "The state fire marshal, his or her deputies, and assistants, charged with the enforcement of the Fire Safety Code, chapters 28.1 through 28.39 of this title, shall not render themselves liable personally, and they are hereby relieved from all personal liability for any damage that may accrue to persons or property as a result of any act required or permitted in the discharge of their official duties. *** [A]ny fire marshal, acting in good faith and without malice, shall be free from liability for acts performed under any of its provisions or by reason of any act or omission in the performance of his or her official duties in connection therewith."

and inspect commercial premises." *Id.* at 544, 87 S.Ct. at 1740, 18 L.Ed.2d at 947. The Supreme Court further stated that "administrative entry, without consent, upon the portions of commercial premises which are not open to the public may only be compelled through prosecution or physical force within the framework of a warrant procedure." *Id.* at 545, 87 S.Ct. at 1740, 18 L.Ed.2d at 947. With respect to a routine building inspection a reasonable balance between competing concerns of the need for intrusion and the threat of disruption is "usually achieved by broad legislative or administrative guidelines specifying the purpose, frequency, scope, and manner of conducting the inspections." *Michigan v. Tyler,* 436 U.S. 499, 507, 98 S.Ct. 1942, 1949, 56 L.Ed.2d 486, 497 (1978). A warrantless entry may be legal where an emergency situation necessitates a prompt inspection. *See id.* at 509, 98 S.Ct. at 1950, 56 L.Ed.2d at 498; *Camara,* 387 U.S. at 539, 87 S.Ct. at 1736, 18 L.Ed.2d at 941. However,

> "in the case of most routine area inspections, there is no compelling urgency to inspect at a particular time or on a particular day. Moreover, most citizens allow inspections of their property without a warrant. Thus, as a practical matter and in light of the Fourth Amendment's requirement that a warrant specify the property to be searched, it seems likely that warrants should normally be sought only after entry is refused *unless there has been a citizen complaint or there is other satisfactory reason for securing immediate entry.*" *Camara,* 387 U.S. at 539–40, 87 S.Ct. at 1736, 18 L.Ed.2d at 941–42. (Emphasis added.)

Section 23–28.2–20 of the Rhode Island General Laws states:

> "In the discharge of its duties, the authority having jurisdiction shall have the authority to enter at any reasonable hour, any building, structure, or premises in the state to enforce the provisions of the Fire Safety Code, chapters 28.1–28.39 of this title. If any owner, occupant, or other person refuses, impedes, inhibits, interferes with, restricts, or obstructs entry and free access to every part of the structure, operation, or premise where inspection authorized by this code is sought, the authority having jurisdiction may:
>
> (1) Seek in a court of competent jurisdiction a search warrant so as to apprise the owner, occupant, or other person concerning the nature of the inspection and justification for it, and may seek the assistance of police authorities in presenting the warrant; and/or
>
> (2) Revoke or suspend any license, permit, or other permission regulated under this code where inspection of the structures, operation or premises, is sought to determine compliance with this code."

In the case before us, Franklin ordered his officers to deny access into and out of the building and he entered areas not generally open to the public. This constituted a search and seizure within the meaning of the Fourth Amendment. However, questions of material fact remain as to whether consent had been given and the search was reasonable, or whether an emergency situation existed which necessitated a warrantless inspection. Consequently, summary judgment was improper as to Fire Chief Franklin.

For the foregoing reasons, Vaill's appeal as to the officers is denied, but Vaill's appeal as to Franklin is sustained. The summary judgment appealed from is sustained in part and vacated in part. The papers in this case are remanded to the Superior Court.

Justices FLANDERS and GOLDBERG did not participate.