2442

SOUTH CAROLINA FARM BUREAU MUTUAL INSURANCE COMPANY, Appellant v. UNITED STATES FIDELITY AND GUARANTY INSURANCE COMPANY, Ronald Canty and Scottswood Plantation, Respondents.

(465 S.E. (2d) 777)

Court of Appeals

*M.M. Weinberg, Jr.,* of *Weinberg, Brown, McDougall & McMillan,* Sumter, *for appellant.*

*David C. Holler* and *Harry C. Wilson, Jr.,* both of *Lee, Wilson & Erter,* Sumter, *for respondents.*

Submitted Dec. 5, 1995.

Decided Dec. 28, 1995.

*Per Curiam:*

This is a declaratory judgment action in which two insurance carriers seek to determine which company has the primary responsibility for payment of underinsured motorist coverage to Ronald Canty. The trial court held Farm Bureau was primarily responsible for the coverage. Farm Bureau appeals. We reverse.

The facts are not in dispute. Ronald Canty is the caretaker of Scottswood Plantation, a hunting and fishing retreat in Williamsburg County. On Christmas Day, 1989, Canty was injured in a car wreck while driving a vehicle owned by Scottswood Plantation. Although he was working at the time, Canty did not file for workers' compensation benefits. He initiated a personal injury action against the driver of the other vehicle and noticed underinsurance claims with Farm Bureau and USF & G. Farm Bureau provided underinsured motorist coverage to Canty under a personal automobile policy issued in his name. USF & G provided underinsured motorist coverage under a commercial policy issued to Scottswood Plantation, Canty's employer. The other driver's liability carrier paid

the limits of its coverage in exchange for a covenant not to execute against its insured. USF & G and Farm Bureau settled with Canty for twenty-two thousand dollars ($22,000) with each carrier paying $11,000 of the settlement. Both Farm Bureau and USF & G assert the other provides the primary underinsured motorist coverage and each seeks indemnification for the amount of the settlement it paid to Canty.

After a review of the applicable insurance policies, the trial court held the USF & G policy excluded employees from coverage and this exclusion was in conformity with South Carolina statutory law. As an additional sustaining ground, the trial court held Canty was a Class I insured under the Farm Bureau policy and a Class II insured under the USF & G policy. The trial court concluded Canty must exhaust his Class I UIM coverage under the Farm Bureau policy before he could receive any Class II UIM coverage under the USF & G policy. Accordingly, the trial court ordered Farm Bureau to reimburse $11,000 to USF & G.

I.

Farm Bureau argues the trial court erred in its interpretation of the USF & G policy because the trial court relied upon exclusions contained in the liability section of the policy as opposed to the language of the UIM endorsement. Farm Bureau contends the UIM endorsement controls and by this endorsement USF & G provided primary UIM coverage to Canty. We agree.

USF & G issued a business automobile insurance policy to Scottswood Properties. The policy provided liability, uninsured, and underinsured motorist coverages in the amount of $500,000 each. Section II of the policy outlines the liability coverage. Section (B)(3) of the liability section contains the following exclusions:

> This insurance does not apply to any the following:
> **(3) WORKERS COMPENSATION**
> Any obligation for which the "insured" or the "insured's" insurer may be held liable under any workers compensation, disability benefits or unemployment compensation law or any similar law.
> **(4) EMPLOYEE INDEMNIFICATION AND EMPLOYER'S LIABILITY**

"Bodily injury" to: (a) [a]n employee of the "insured" arising out of and in the course of employment by the "insured,"

\*       \*       \*       \*       \*

But this exclusion does not apply to "bodily injury" to domestic employees not entitled to workers compensation benefits or to liability assumed by the "insured" under an "insured contract."

The USF & G policy also contained an endorsement for uninsured and underinsured motorist coverage in a form provided and approved by the Insurance Services Office. This form interchanged the terms uninsured and underinsured motor vehicle throughout its definitional section. The relevant provisions of the endorsement provide as follows:

**A. COVERAGE**

1. We will pay in accordance with the South Carolina Uninsured Motorists Law all sums the "insured" is legally entitled to recover as damages from the owner or driver of an "uninsured motor vehicle."

\*       \*       \*       \*       \*

**B. WHO IS AN INSURED**

1. You.

\*       \*       \*       \*       \*

3. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto."

\*       \*       \*       \*       \*

**D. LIMIT OF INSURANCE**

\*       \*       \*       \*       \*

2. Any amount payable under this insurance shall be reduced by:

b. All sums paid or payable under any workers compensation, disability benefits or similar law, but only if "bodily injury" was caused by a vehicle described in paragraph b. of the definition of "uninsured motor vehicle."

The trial court concluded the USF & G policy excluded underinsured motorist coverage for employees acting within the course of their employment. The court relied primarily upon the exclusion for "Employee Indemnification and Employer's

Liability" found in the liability section of the policy, and did not agree with Farm Bureau's argument that the terminology of the UIM endorsement controlled and superseded the employee exclusion in the liability section of the policy.

S.C. Code Ann. § 38-77-220 (Rev. 1989) provides "[t]he automobile policy need not insure any liability under the Workers' Compensation Law nor any liability on account of bodily injury to an employee of the insured while engaged in the employment, other than domestic, of the insured. . . ." This court interpreted the statute in *State Farm Mutual Automobile Ins. Co. v. North River Ins. Co.*, 288 S.C. 374, 342 S.E. (2d) 627 (Ct. App. 1986). In that case, an employee of State Farm's insured was killed in the course and scope of his employment while operating a truck owned by the insured. The employee was not covered by workers' compensation. His wife brought a wrongful death action against State Farm's insured alleging the truck was negligently maintained by the insured. The State Farm policy contained an exclusionary clause which provided that there was no liability for bodily injury to "any employee of an insured arising out of his or her employment." We held the exclusionary clause in the State Farm policy was consonant with statutory law and was applicable to the case. Accordingly, there was no liability coverage under the policy. *Id.* at 376, 342 S.E. at 628.

Our supreme court recently addressed Section 38-27-220 in the context of underinsured motorist benefits in *Williamson v. U.S. Fire Ins. Co.*, 314 S.C. 215, 442 S.E. (2d) 587 (1994). The facts of *Williamson* are particularly apposite to this case. Williamson was employed by Stanly Lines Construction Inc. He was injured in an automobile accident while performing duties in the course and scope of his employment. Williamson was not at fault in the accident and the at-fault driver's liability carrier paid its minimum limits to Williamson. Williamson also received workers' compensation benefits. Stanly Lines carried an automobile insurance policy with UIM coverage though United States Fire Insurance Company. The terms of the policy required an offset for amounts received under any workers' compensation law. The issue on appeal concerned whether United State Fire Insurance, as Stanly Line's UIM carrier, could offset workers' compensation benefits received by Williamson. The court held Section 38-77-220 allows an em-

ployer's automobile insurance carrier to offset workers' compensation benefits received by an employee. *Id.* at 217, 442 S.E. (2d) at 589.

The employer in *Williamson* chose to purchase UIM coverage. The supreme court considered the same policy language in that case as contained in Section (D)(2)(b) of the UIM endorsement of the USF & G policy. There was no question in the *Williamson* case that the employee was entitled to recover UIM benefits under the employer's policy. In this case, Scottswood Plantation also chose to purchase UIM coverage. The contractual terms of that coverage are specifically contained in the UIM endorsement to the policy, not the liability section. By the terms of the endorsement, Canty was an insured since he was occupying a covered auto at the time of the accident. Therefore, he was entitled to recover underinsured motorist benefits subject to the right of USF & G to offset workers' compensation benefits received by him. The fact that Canty did not receive workers' compensation benefits does not abrogate USF & G's obligation to pay UIM benefits under policy.

We conclude the court erred in its interpretation of the USF & G policy and hold the terms of the UIM endorsement provide underinsured motorist benefits to Canty.

## II.

As an alternative ground, the trial court held Canty was a Class I insured under the Farm Bureau policy and a Class II insured under the USF & G policy. Applying an "Other Insurance" provision of the USF & G policy, the court held Canty must exhaust his Class I UIM coverage under the Farm Bureau policy before receiving any Class II UIM benefits from the USF & G policy.

Canty was the named insured of a personal auto policy purchased from Farm Bureau. That policy provided underinsured motorist coverage in which Farm Bureau agreed to pay "damages for bodily injury or property damage a covered person is legally entitled to collect from the owner or operator of an underinsured motor vehicle." As the named insured, Canty was a "covered person" as defined in the policy. The additional limits of liability and other coverage section of the Farm Bureau policy contained a provision addressing multiple coverages.

Subsection 6 states: "If a covered person sustains bodily injury or property damage while occupying a vehicle not owned by a covered person, this coverage applies as excess coverage to any basic limits uninsured and/or underinsured motorist coverage which applied to the vehicle as primary coverage."

The USF & G policy provided the company would pay "in accordance with the South Carolina Uninsured [Underinsured] Motorists Law all sums the 'insured' is legally entitled to recover as damages from the owner or driver of an 'uninsured [underinsured] motor vehicle.'" Canty was a covered person under this policy by virtue of his permissive use of the Scottswood Plantation vehicle at the time of the accident. The USF & G policy and endorsement contained an "Other Insurance" provision which stated "[f]or any covered 'auto' you own, this Coverage Form provides primary insurance. For any covered 'auto' you don't own, the insurance provided by this Coverage Form is excess over any collectible insurance."

The trial court held Farm Bureau provided the primary underinsured coverage and USF & G provided excess underinsured coverage. This was error. Based upon the contractual provisions of the insurance policies, USF & G provided the primary coverage because the vehicle involved in the accident was a Scottswoods Plantation vehicle insured by the USF & G policy. The vehicle was being permissively used by Canty at the time of the accident. *See Whitmire v. Nationwide Mut. Ins. Co.*, 254 S.C. 184, 174 S.E. (2d) 391 (1970). This interpretation is in accord with the Farm Bureau policy which provides excess coverage for a covered person who sustains bodily injury while occupying a vehicle not owned by the covered person.

The trial court erred in its interpretations of the Farm Bureau and USF & G policies. We conclude the USF & G policy provides primary underinsured motorist coverage to Canty as a permissive user of the Scottswood Plantation vehicle. The decision of the trial court is

Reversed.

SHAW, CONNOR and HEARN, JJ., concur.