482 S.E.2d 589

**Janice Lee COBB, Appellant/Respondent,**

v.

**Edith W. BENJAMIN, Nationwide Mutual Ins. Co., Respondents,**

**Auto–Owners Ins. Co., Respondent/Appellant.**

No. 2626.

Court of Appeals of South Carolina.

Heard Nov. 6, 1996.

Decided Jan. 27, 1997.

Rehearing Denied March 20, 1997.

J. David Standeffer and John P. Griffith, both of Standeffer & Brislane, Anderson, for appellant/respondent.

Carey C. Doyle, of Doyle & O'Rourke, Anderson, for respondents.

Phillip E. Reeves & Jennifer E. Johnsen, both of Gibbes, Gallivan, White & Boyd, Greenville, for respondent/appellant.

HOWARD, Judge:

In this declaratory judgment action, we are asked to determine whether or not S.C.Code Ann. § 38–77–160 (Supp.1995) requires the payment of liability limits under a tortfeasor's automobile insurance policy before underinsured motorist (UIM) coverage is recoverable by an injured party. The trial court held the UIM carrier is entitled to a credit for any amount of liability insurance coverage not exhausted in a settlement, but § 38–77–160 does not condition UIM coverage on the payment of all liability coverage. We agree and affirm.

Janice Lee Cobb was injured in an automobile accident when her vehicle collided with an automobile driven by Edith W. Benjamin and owned by Freddie Williams. Benjamin was driving with Williams's permission. Cobb maintained insurance through Auto–Owners Insurance Company (Auto–Owners) with $25,000 in UIM coverage. Williams had liability coverage through State Farm Insurance Company (State Farm) with $15,000 in liability coverage.

Cobb's medical bills exceeded $16,000. Cobb made a claim against Benjamin, and settled with State Farm by executing a settlement agreement and partial release in exchange for the State Farm policy limits of $15,000. In the agreement, Cobb released State Farm, Williams, and Benjamin from all liability arising out of the accident. The release agreement contained the following language reserving Cobb's claims for underinsured motorist benefits:

This release is not intended to and does not release any claims that I may have for underinsured motorist benefits. I expressly reserve the right to prosecute a legal action in tort against FREDDIE WILLIAMS and EDITH W. BENJAMIN, if necessary, solely for the purpose of establishing claims against underinsured motorist carriers for underin-

sured motorist benefits. For the consideration recited above, we specifically agree and covenant that we will never seek to execute on such judgment obtained against FREDDIE WILLIAMS and EDITH W. BENJAMIN. I agree that I will only seek to collect such judgment from such underinsured motorist carriers as may be found to have such coverage. I further agree and covenant that if a verdict is returned in my favor against FREDDIE WILLIAMS and EDITH W. BENJAMIN, I will move the court to order that the judgment be entered against the underinsured motorist carrier and not against FREDDIE WILLIAMS and EDITH W. BENJAMIN. If a judgment is entered against FREDDIE WILLIAMS and EDITH W. BENJAMIN, I specifically agree and covenant that I and my attorneys will mark the judgment paid and satisfied as soon as is legally practicable to do so without making any effort to collect any amount from FREDDIE WILLIAMS and EDITH W. BENJAMIN.

After settlement, Cobb's attorney discovered Benjamin also had liability insurance with Nationwide Mutual Insurance Company (Nationwide), with limits of $15,000. Cobb made a claim against Nationwide and Auto–Owners, both of whom denied payment. Nationwide contends the release of its insured also released Nationwide. Auto–Owners claims UIM coverage is not triggered because the liability insurance available to Cobb has not been exhausted by payment of liability limits available to Cobb. The underlying tort action has been stayed pending resolution of these questions.

The lower court determined the release of Benjamin did release Nationwide. The court also ruled Cobb may collect UIM coverage to the extent she proves a claim, but Auto–Owners is entitled to a credit for all unpaid liability insurance which was available to Cobb.

## SCOPE OF REVIEW

This case involves an action at law for interpretation of a contract referred to the master-in-equity with direct appeal to the supreme court. Therefore, this court will correct any error of law, but we must affirm the master's findings unless

there is no evidence reasonably supporting them. *Jefferies v. Phillips,* 316 S.C. 523, 451 S.E.2d 21 (Ct.App.1994).

## COBB'S APPEAL

Cobb argues the lower court erred in finding the settlement agreement relieved Benjamin, and therefore Nationwide, from all liability. We disagree.

The lower court found the settlement agreement was a covenant not to execute rather than a release. A covenant not to execute is treated differently than a settlement agreement which is a release. *See Ackerman v. Travelers Indem. Co.,* 318 S.C. 137, 456 S.E.2d 408 (Ct.App.1995). To determine whether an instrument is a covenant not to execute or a release, we look to the intention of the parties. *Id.* Here, the parties agreed not to execute a judgment against Benjamin, but specifically reserved the right to proceed against any available UIM coverage. Accordingly, the agreement was a covenant not to execute. *See id.* at 146, 456 S.E.2d at 413 (a covenant not to sue is a promise not to enforce a right of action or to execute a judgment when one had such right at the time of entering into the agreement). In *Ackerman,* our court ruled a covenant does not operate to relieve a UIM carrier of its obligations where the written agreement shows the parties did not intend to do so. *Id.*

When a contract is unambiguous, clear, and explicit, it must be construed according to the terms the parties have used, to be taken and understood in their plain, ordinary, and popular sense. *C.A.N. Ent. v. Health & Human Services,* 296 S.C. 373, 373 S.E.2d 584 (1988). The duty of the appellate court is limited to the interpretation of the contract made by the parties themselves "regardless of its wisdom or folly, apparent unreasonableness, or failure to guard their rights carefully." *Id.* at 378, 373 S.E.2d at 586.

In the covenant, Cobb explicitly reserved the right to collect proceeds from any applicable UIM carriers. She did not reserve the right to collect from any undiscovered liability carriers. Under the agreement, Cobb may not execute on a judgment against Benjamin and, in the event of a favorable verdict, she can enter judgment only against the UIM carrier

and not Benjamin. The language relieves Benjamin from the personal obligation to pay any judgment. An insurance company is only obligated to pay "those sums which the insured becomes legally obligated to pay." *Smalls v. Blackmon,* 269 S.C. 614, 617, 239 S.E.2d 640, 641 (1977). An automobile liability insurance policy is a contract of indemnity and the carrier is placed in the same position as its insured. *Id.* When Cobb removed the obligation to pay a judgment from Benjamin, she also relieved Nationwide of its liability to pay under Benjamin's policy. The trial court was correct in its determination the covenant not to execute relieved Nationwide from liability.

Cobb argues Nationwide is still obligated under the liability policy because it did not provide consideration for the agreement. Cobb asserts the release of one joint tortfeasor does not release the other joint tortfeasors unless the intention of the parties was otherwise or the plaintiff has received full compensation to his satisfaction. This argument is without merit.

Benjamin was an insured under the State Farm policy as a permissive user of the vehicle. S.C.Code Ann. § 38–77–30 (1989) (defining "insured" to include permissive users). State Farm paid $15,000 on behalf of its insured in consideration for the settlement agreement. When a liability insurance carrier provides consideration for a release, the release protects the insured. The money for a release is paid by or on behalf of the insured. *Brown v. Walker Lumber Co.,* 128 S.C. 161, 165, 122 S.E. 670, 671 (1924). Therefore, the consideration for the settlement agreement protects State Farm's insured, Benjamin. Nationwide, which is in the same position as Benjamin, is also protected. *See Smalls* at 614, 239 S.E.2d 640. Moreover, Nationwide is a liability carrier, not a joint tort-feasor. It is not directly liable for Cobb's damages. *Id.* Cobb may not recover under the Nationwide policy.[1]

---

1. It is possible Nationwide's policy of insurance may have contained language which would have triggered coverage to Cobb despite the settlement agreement. When a dispute arises over an insurer's liability to cover a given loss, the written insurance contract must be read to ascertain the precise duties undertaken by the insurer. Like contracts in general, an insurance agreement must be enforced according to its

580

## AUTO–OWNERS' APPEAL

In its cross-appeal, Auto–Owners claims Cobb cannot receive UIM benefits because she failed to exhaust the full limits from all available liability policies.

Preliminarily, Cobb argues Auto–Owners is not a party "aggrieved by an order or judgment" and therefore does not have the right to appeal. *See* Rule 201, SCACR; S.C.Code Ann. § 18–1–30 (1976). Auto–Owners alleged in its answer and counterclaim the alternative position that Cobb is not entitled to UIM benefits unless she first proves damages exceeding the liability limits of all available policies. The final order essentially granted this relief by giving a credit for the Nationwide coverage. Cobb asserts by this ruling Auto–Owners was granted the relief they requested, and is therefore not "aggrieved." We find this position to be without merit, and dispose of it pursuant to S.C.Code Ann. § 14–8–250 (Supp.1995), Rule 220(b), SCACR, and the following authorities: *Cisson v. McWhorter*, 255 S.C. 174, 178, 177 S.E.2d 603, 605 (1970) (A person is aggrieved by a judgment or decree "when it operates on his rights of property or bears directly upon his interest, the word aggrieved referring to a substantial grievance, a denial of some personal or property right or the imposition on a party of a burden or obligation."); Rule 8, SCRCP (relief in the alternative or of several different types may be demanded).

 Auto–Owners asserts Cobb's UIM policy contains a clause requiring exhaustion of liability insurance as a precondition to payment of UIM benefits. It is generally conceded insurers have the right to limit their liability and to impose whatever conditions they desire upon an insured, provided they are not in contravention of some statutory inhibition or

---

terms. *Torrington v. Aetna Casualty & Sur. Co.*, 264 S.C. 636, 216 S.E.2d 547 (1975); *see South Carolina Farm Bureau Mut. Ins. Co. v. United States Fidelity & Guar. Ins. Co.*, 320 S.C. 489, 465 S.E.2d 777 (Ct.App.1995) (construing two policies for underinsured motorist coverage to determine if the policies provide primary or excess coverage). Cobb, as the appellant in this issue, had the burden of presenting the court with an adequate record. *Vespazianni v. McAlister*, 307 S.C. 411, 415 S.E.2d 427 (Ct.App.1992). However, the Nationwide policy is not part of the record on appeal and therefore this court may not consider it. *See* Rule 209(h), SCACR.

public policy. *Pennsylvania Nat'l Mut. Casualty Ins. Co. v. Parker*, 282 S.C. 546, 550–51, 320 S.E.2d 458, 461 (Ct.App. 1984). Reasonable exclusionary clauses which do not conflict with the legislative expression of the public policy of the State as revealed in the various motor vehicle insurance statutes are permitted. *Id.* Where a statute requires insurance for the benefit of the public, however, the insurer is not permitted to nullify its purposes through engrafting exceptions from liability as to uses which it was the evident purpose of the statute to cover. *Id.*

The Auto–Owners insurance policy is not in the record on appeal.[2] As the appellant on this issue, Auto–Owners had the burden of presenting a sufficient record for review. Without reviewing the language of the policy, we cannot address this question. *See Vespazianni* at 411, 415 S.E.2d at 427 (where appellant failed to provide facts sufficient to overcome the presumption in favor of correctness of the order below, the appellate court must affirm). Therefore, our review is strictly limited to the issue of whether S.C.Code Ann. § 38–77–160 requires payment of liability limits as a precondition of entitlement to UIM benefits, irrespective of the policy language.

This is a two-pronged inquiry. First, we must determine if § 38–77–160 states this requirement. Only if it does do we then reach the second prong; which is whether such a requirement is threshold, negating any language in the policy to the contrary. In this regard, we are aware other jurisdictions have held just the opposite. *In re Estate of Rucker*, 442 N.W.2d 113 (Iowa 1989) (exhaustion clause in UIM policy violates public policy); *Mulholland v. State Farm Mut. Auto. Ins. Co.*, 171 Ill.App.3d 600, 122 Ill.Dec. 657, 527 N.E.2d 29 (1988) (exhaustion clause in policy is void as a violation of public policy). We are also aware our supreme court held in

---

2. By order dated August 25, 1995, the supreme court granted Cobb's motion to strike the Auto–Owners policy from the record on appeal. This court may not consider a fact which does not appear in the record on appeal. Rule 209(h), SCACR. At the hearing before the lower court, counsel for Auto–Owners depicted the relevant language of the policy. However, where there is no stipulation, a representation of fact by counsel in written briefs, memoranda or made during oral argument, may not be considered by the court where it is unsupported by the record. *Gilmore v. Ivey*, 290 S.C. 53, 58, 348 S.E.2d 180, 183 (Ct.App.1986).

*Gambrell v. Travelers Ins. Cos.*, 280 S.C. 69, 71, 310 S.E.2d 814, 816 (1983) that "[t]he only restriction recognized by [S.C.Code Ann. § 56–9–831 (Supp.1982), the forerunner to § 38–77–160 (Supp.1987 & 1989) ] is that an insured may not have a greater amount of underinsured motorist coverage than he has liability coverage." However, § 56–9–831 did not contain the same language as § 38–77–160 (Supp.1989). Therefore, we conclude neither our supreme court nor our court has heretofore addressed this precise issue.

If § 38–77–160 requires the exhaustion of liability coverage, irrespective of the policy language, then the lower court erred in its decision. To determine whether Cobb is barred from receiving UIM benefits, we must ascertain the intent of the legislature in enacting the statute. The pertinent part of the South Carolina UIM statute originally provided as follows:

[Automobile insurance] carriers shall also offer, at the option of the insured, underinsured motorist coverage up to the limits of the insured's liability coverage to provide coverage in the event that damages are sustained in excess of the liability limits carried by an at fault insured or underinsured motorist or in excess of any damages cap or limitation imposed by statute. . . .

S.C.Code Ann. § 56–9–831 (Supp.1982), *superseded by* S.C.Code Ann. § 38–77–160 (1987).

The statute was amended in 1989 to include a second paragraph, reading in pertinent part as follows:

No action may be brought under the underinsured motorist provision unless copies of the pleadings in the action establishing liability are served in the manner provided by law upon the insurer writing the underinsured motorist provision. The insurer has the right to appear and defend in the name of the underinsured motorist in any action which may affect its liability. . . . In the event the automobile insurance insurer for the putative at-fault insured chooses to settle in part the claims against its insured **by payment of its applicable liability limits** on behalf of its insured, the underinsured motorist insurer may assume control of the defense of [the] action for its own benefit. No underinsured

motorist policy may contain a clause requiring the insurer's consent to settlement with the at-fault party.

S.C.Code Ann. § 38–77–160 (Supp.1995) (emphasis added).

Auto–Owners contends the second paragraph of § 38–77–160 requires "payment of . . . applicable liability limits" before a UIM carrier can assume control of the defense. They argue this is clear evidence of legislative intent to require exhaustion by payment of liability limits, because logically, if the liability carrier were allowed to settle for less than policy limits, the UIM carrier would have liability exposure with no corresponding right to undertake the defense of the tort action. We disagree with this interpretation of the statute.

The central purpose of the UIM statute is to provide coverage where the injured party's damages exceed the liability limits of the at-fault motorist. S.C.Code Ann. § 38–77–160; *Gambrell* at 69, 310 S.E.2d at 814. Interpreting the 1989 addition to the statute, our supreme court found the purpose of the second paragraph is "to protect an insurance carrier's right to contest its liability for underinsured benefits." *Williams v. Selective Ins. Co.*, 315 S.C. 532, 534, 446 S.E.2d 402, 404 (1994). Thus, the failure to serve the underinsured motorist carrier with a copy of the pleadings in a timely action to establish liability of the underlying tort-feasor precludes a claim under the UIM coverage. Where the statute of limitations on the tort claim expires with no action having been commenced, a UIM claim is foreclosed. Describing the application of this paragraph, the court noted, "In the event the [UIM] insured chooses to settle with the at-fault party's liability carrier, the [UIM] carrier has the option to assume control of the defense of the action . . . ." *Id.*

▆▆▆ Our court has recognized a liability insurer generally owes two separate and distinct duties to the insured. *Nationwide Mut. Ins. Co. v. Tate*, 313 S.C. 444, 438 S.E.2d 266 (Ct.App.1993). First, the insurer is obligated to pay sums the insured becomes obligated to pay. Second, the liability insurer must defend any suit alleging bodily injury or property damage seeking damages payable under the terms of the policy. *Id; Sloan Constr. Co. v. Central Nat'l Ins. Co.*, 269 S.C. 183, 236 S.E.2d 818 (1977). A tender of policy limits does not relieve an insurer's duty to defend its insured. *Nation-*

*wide Mut. Ins. Co. v. Simmonds,* 315 S.C. 404, 434 S.E.2d 277 (1993).

The 1989 amendment to § 38–77–160 states the UIM carrier has the "right to appear and defend in the name of the underinsured motorist in any action which may affect its liability. . . ." Its right to "assume control of the defense of [the] action for its own benefit" complements this right, but is separately stated because it is limited, as construed in *Williams,* to the circumstance where the liability carrier for the putative at-fault insured chooses to settle in part the claims against its insured. *Williams* at 535, 446 S.E.2d at 404.

The language giving the UIM carrier the right to assume control of the defense for its own benefit is, we think, consistent with the recognition that the liability carrier who has paid its limits no longer has the same stake in the outcome, even though the contractual obligation to its insured to defend is ongoing. Historically, then, this shift in control of the defense was logically connected to the exhaustion of coverage.

The primary concern in interpreting a statute is to ascertain and give effect to the intention of the legislature. *Holley v. Mount Vernon Mills, Inc.,* 312 S.C. 320, 440 S.E.2d 373 (1994); *Singletary v. South Carolina Dept. of Educ.,* 316 S.C. 153, 447 S.E.2d 231 (Ct.App.1994). All rules of statutory construction are subservient to the one that the legislative intent must prevail if it can be reasonably discovered in the language used, and that language must be construed in the light of the purpose of the statute. *Id.* Though the provision specifically references the payment of liability limits as a condition under which the UIM carrier has the right to assume control of the defense for its own benefit, this is not dispositive of its exclusivity. "[T]he inclusion of certain provisions in a statute may be some evidence that the exclusion of others was purposeful, but the weight accorded this evidence may vary." *Santee Portland Cement v. Daniel Int'l Corp.,* 299 S.C. 269, 273, 384 S.E.2d 693, 695 (1989) (rejecting the contention the legislature intended to limit the application of the discovery rule under § 15–3–530 to those actions specifically mentioned in an amendment, excluding others not named, when the amendment followed closely in response to a federal case construing those causes actually mentioned), *dicta*

*overruled to extent inconsistent with holding in Atlas Food*
*Systems & Servs. v. Crane Nat. Vendors,* 319 S.C. 556, 462
S.E.2d 858 (1995).

In 1993, we determined that when a liability carrier obtains
a settlement agreement relieving its insured of personal liabili-
ty, its duty to defend is discharged and its counsel may
withdraw. *Tate* at 447–48, 438 S.E.2d at 268. In that situa-
tion, the UIM carrier has no standing to enforce the duty to
defend on the liability carrier. *Id.* In 1995, our supreme
court recognized a settlement which included a covenant not to
execute against the putative at-fault driver could preserve the
right to UIM benefits. *Ackerman* at 137, 456 S.E.2d at 408.
The combined effect of these two decisions is to allow the
liability carrier to withdraw from representation where the
personal liability of the putative at-fault party is resolved, and
to allow this resolution to occur by settlement of less than the
full liability limits while still preserving the UIM claim. Not
only do we think it logical that the legislature intended to
allow the UIM carrier to take control of the defense in this
situation, we think our supreme court has said so by interpret-
ing the statute in *Williams* in such a way as to delete
reference to the language "by payment of its applicable liabili-
ty limits." *Williams* at 535, 446 S.E.2d at 404 ("In the event
the [UIM] insured chooses to settle with the at-fault party's
liability carrier, the [UIM] carrier has the option to assume
control of the defense of the action. . . .")

There are no South Carolina cases directly on point. The
majority of jurisdictions which have considered this issue hold
such settlements do not preclude underinsured coverage, but
UIM carriers may credit the full liability limits against their
insureds' damages. For example, the Supreme Court of
Washington found the purpose of Washington's UIM statute [3]

---

3. "Underinsured motor vehicle" means a motor vehicle with respect
to the ownership, maintenance, or use of which . . . the sum of the
limits of liability under all bodily injury or property damage liability
bonds and insurance policies applicable to a covered person after an
accident is less than the applicable damages which the covered
person is legally entitled to recover.
*Hamilton v. Farmers Ins. Co. of Wash.,* 107 Wash.2d 721, 733 P.2d 213,
216 (1987) (citing RCW 48.22.030(1)).

is to compensate fully the injured insured under a UIM policy. *Hamilton*, 733 P.2d at 213. The court explained,

> The injured insured is entitled to compensation from his underinsurer without regard to any recovery obtained from other sources and without regard to whether such recovery exhausts any coverage provided by the liability insurers of the tortfeasor, until the injured insured's underinsurance policy limits are reached or he is fully compensated for his damages, whichever occurs first.

*Id.* at 216. *See also Aetna Casualty & Sur. Co. v. Farrell,* 855 F.2d 146 (3d Cir.1988) (applying New Jersey law); *Adkinson v. State Farm Mut. Auto. Ins. Co.,* 856 F.Supp. 637 (M.D.Ala. 1994) (interpreting terms "use up" and "exhaust"); *Rucker,* 442 N.W.2d 113; *Schmidt v. Clothier,* 338 N.W.2d 256 (Minn. 1983) (interpreting Minn.Stat. § 65B.49, subd. 6(e) (1978) (repealed 1980)); *Buzzard v. Farmers Ins. Co.,* 824 P.2d 1105 (Okla.1991) (interpreting 36 O.S.1981 § 3636(C)); *Vega v. Farmers Ins. Co.,* 323 Or. 291, 918 P.2d 95 (1996) (finding exhaustion clause of policy violated ORS 742.504); *Longworth v. Van Houten,* 223 N.J.Super. 174, 538 A.2d 414 (App.Div. 1988) (interpreting N.J.S.A. 17:28–1.1); *Boyle v. Erie Ins. Co.,* 441 Pa.Super. 103, 656 A.2d 941, 943 (1995) (construing an exhaustion clause as a "threshold requirement and not a barrier to underinsured motorist insurance coverage"); *Leal v. Northwestern Nat. County Mut. Ins. Co.,* 846 S.W.2d 576 (Tex.Ct.App.1993) (interpreting Tex.Ins.Code Ann. art. 5.06–1(5) (West 1981)); *Olivas v. State Farm Mut. Auto. Ins. Co.,* 850 S.W.2d 564 (Tex.Ct.App.1993); *accord, Mulholland,* 527 N.E.2d 29; *Sorber v. American Motorists Ins. Co.,* 451 Pa.Super. 507, 680 A.2d 881 (1996).

Several other jurisdictions have held UIM carriers are not required to pay benefits when their insureds settle for less than the full amount of the tortfeasor's policy limits. *Robinette v. American Liberty Ins. Co.,* 720 F.Supp. 577 (S.D.Miss. 1989) (interpreting Miss.Code Anno. § 83–11–103(c)(iii) (Supp. 1989) and exhaustion clause in UIM policy), *aff'd,* 896 F.2d 552 (5th Cir.1990); *Continental Ins. Co. v. Cebe–Habersky,* 214 Conn. 209, 571 A.2d 104 (1990) (interpreting General Statutes § 38–175c(b)(1)); *Amica Mut. Ins. Co. v. Morrison,* 130 N.H. 250, 536 A.2d 199 (1987) (interpreting RSA 264:19 and UIM

policy in a case where the insured's damages did not exceed the limits of the liability policy).

Finally, several jurisdictions have found the exhaustion requirement void as against public policy. *See, e.g., Rucker,* 442 N.W.2d at 116; *Schmidt,* 338 N.W.2d at 256; *Mulholland,* 527 N.E.2d at 29; *Longworth,* 538 A.2d at 414. The Iowa Supreme Court found such a requirement would discourage prompt payment of claims and would increase the burden of litigation. *Rucker* at 116. "The insured should have the right to accept what he or she considers the best settlement available against the tortfeasor·without relinquishing underinsurance protection." *Id.* at 117. *See Schmidt* at 260–61 ("Where the best settlement available is less than the [tortfeasor's] liability limits, the insured should not be forced to forego settlement and go to trial in order to determine the issue of damages.") However, we think any such decision interpreting language to be void as against public policy is beyond the scope of the issues presented because the policy in question is not a part of this record.

Auto–Owners contends allowing insureds to collect UIM benefits without first exhausting available liability insurance limits fosters litigation, because the insured then has an incentive to settle with the liability carrier for a small amount in order to prosecute the case to conclusion without a defense. They argue this interpretation is against policy concerns of judicial economy because it increases and prolongs litigation where, as here, fair values have already been paid.

As stated above, we do not interpret the statute to prevent the UIM carrier from assuming control of the defense when the liability carrier settles under the policy limits and withdraws from the case. In addition, allowing recovery of UIM in this situation does not encourage insureds to accept low settlements from liability carriers. By allowing full credit of the tortfeasor's policy limits, the insured, rather than the UIM carrier, bears the loss when there is a gap between liability limits and the amount of the settlement. The insured may only recover the difference between the liability policy limit and the damages suffered, subject to the UIM limits. Thus, the "prejudice to the insurer is minimized." *Rucker,* 442 N.W.2d at 117. *See Farrell,* 855 F.2d at 150 ("[W]e do not

perceive how, in most cases, underinsured endorsement carriers actually will be prejudiced if they receive credit for the full limits of the tortfeasors' policy.")

In our opinion, this interpretation of the statute is consistent with traditional notions of judicial economy. There is no reason to require payment of full policy limits of available liability coverage as a precondition to UIM benefits. Such a requirement does not benefit the UIM carrier, as long as it is given a credit for the liability limits which were available.[4] There may be many reasons settlement for less than limits is advantageous. As recognized by other courts which have analyzed this issue, they include: (a) the difficulty of ascertaining the exact amount of settlement in some structured agreements, such as those which include future medical benefits contingent upon surgery or other medical need; (b) the uncertainty of recovery, and the costs associated with continuing litigation; and (c) the health or other current necessities of the insured or the at-fault driver making immediate compromise propitious. These reasons nourish settlement, consistent with judicial economy.

We find the majority view reflects the purpose of the legislature in enacting S.C.Code Ann. § 38–77–160. This is consistent with both the overall intention of § 38–77–160 to provide coverage where the injured party's damages exceed the liability limits of the at-fault motorist, and with the 1989 amendment to the statute "to protect an insurance carrier's right to contest its liability for underinsured benefits." *Williams* at 534, 446 S.E.2d at 404. We conclude this language is specifically intended to provide a mechanism for the UIM carrier to take control of the defense of the action once the liability carrier is released. The payment of liability limits is but one way in which that occurs.

---

4. In fact, situations in which such a requirement adversely impacts upon a UIM insurer are easily foreseeable. For example, where liability coverage is contested, a compromise is not unforeseeable. Settlement for full limits may be unrealistic where such factual scenarios as questionable driver permission or payment of premiums are involved. If the contest is forced to a judgment, and liability coverage is found unavailable, the UIM carrier will normally be liable under the uninsured motorist coverage. Notwithstanding subrogation, it is reasonable to conclude the reality of this situation will likely be financially adverse to such carrier.

We hold § 38–77–160 does not require payment of the applicable liability policy limits as a precondition to collecting UIM benefits, but the UIM carrier is entitled to a credit for any amount of liability insurance coverage not exhausted in a settlement with its insured.

Accordingly the order of the lower court is

**AFFIRMED.**

HOWELL, C.J., and HUFF, J., concur.