LINEBAUGH v FARM BUREAU MUTUAL INSURANCE COMPANY

Docket No. 194913. Submitted May 13, 1997, at Marquette. Decided July 15, 1997, at 9:10 A.M.

Jeremy Linebaugh brought an action in the Houghton Circuit Court against Farm Bureau Mutual Insurance Company, his automobile insurer, seeking to compel the defendant to have the plaintiff's claim for underinsured motorist benefits arbitrated after the plaintiff settled with the insurer of an underinsured motorist despite the objection of the defendant. The defendant's policy provided that underinsured motorist coverage did not apply to any claim settled without the defendant's consent and allowed the defendant or the plaintiff to invoke binding arbitration when they disagreed over whether the plaintiff was legally entitled to recover damages from the underinsured motorist or over the amount of damages. The court, Garfield W. Hood, J., granted summary disposition for the defendant, ruling that coverage was excluded pursuant to the policy exclusion and that the plaintiff was not entitled to arbitration. The plaintiff appealed.

The Court of Appeals *held*:

1. With respect to underinsured motorist coverage, the policy limited arbitration to two issues: liability of the underinsured motorist and extent of the plaintiff's damages. Whether the exclusion at issue applied in a given instance was not a matter that the parties agreed to arbitrate pursuant to the policy, and the trial court and this Court can determine whether the exclusion applied in this case.

2. The plaintiff's failure to obtain the defendant's consent to his settlement with the insurer of the underinsured motorist falls squarely within the exclusion. Thus, he effectively forfeited his underinsured motorist coverage upon settling with the insurer of the underinsured motorist without first obtaining the defendant's consent. The policy did not require that the defendant's refusal to consent had to be reasonable, and no such requirement can be imputed.

Affirmed.

INSURANCE — AUTOMOBILES — UNDERINSURED MOTORISTS COVERAGE — ARBITRATION.

The resolution of whether an exclusionary clause pertaining to underinsured motorist coverage under an automobile insurance policy applies in a given case is not reserved for arbitration, thus allowing a court to decide the question, where the policy limits arbitration to issues relating to the legal liability of the underinsured motorist to the insured and to the amount of the insured's damages.

*Wisti & Jaaskelainen, P.C.* (by *Mark A. Wisti*), for the plaintiff.

*Kendricks Bordeau, P.C.* (by *William R. Smith*), for the defendant.

Before: O'CONNELL, P.J., and SAWYER and MARKMAN, JJ.

O'CONNELL, P.J. In this "underinsured" motorist action, plaintiff appeals as of right the order of the circuit court granting summary disposition in favor of defendant insurer. We affirm.

Plaintiff was struck by an automobile driven by David Whitney and owned by David Whitney's mother, Amelia Whitney. The Whitneys had in place a $25,000 liability policy issued by Auto Club Insurance Association (ACIA). Plaintiff brought suit against the Whitneys, who avoided service of process for as long as they were able before disappearing entirely.

ACIA then offered to settle plaintiff's action. While the Whitneys' policy limit was $25,000, the policy also provided that if the Whitneys failed to cooperate with their insurer, ACIA, during the resolution of a claim, the policy limit would be reduced to $20,000. In light of the fact that the Whitneys could no longer be found, ACIA sought to settle plaintiff's claim for $20,000.

During these settlement negotiations with ACIA, plaintiff was also mindful of *his* insurance policy with

defendant Farm Bureau Mutual Insurance Company. Plaintiff had elected to purchase uninsured motorist coverage incident to a policy of no-fault insurance issued by defendant. The uninsured motorist coverage encompassed "underinsured" motor vehicles, as well, which were defined to be vehicles "for which the sum of all liability bonds or policies at the time of the 'accident' provide[d] . . . less [insurance] than the Limit of Insurance of this coverage." Because the policy limit of plaintiff's underinsured motorist coverage exceeded $20,000,[1] plaintiff was cognizant of the possibility that he would have an underinsured motorist claim against his own insurer, defendant.

Two specific provisions of the underinsured motorist policy are especially pertinent for purposes of this appeal. First, the policy provided that "[t]his [underinsured motorist] insurance does not apply to . . . [a]ny claim settled without our consent." Second, the policy also allowed either the insurer or the insured to invoke binding arbitration where they disagreed whether the insured was "legally entitled to recover damages from the owner or driver of an [underinsured] motor vehicle" or did "not agree as to the amount of damages."

Aware of these provisions, plaintiff sought defendant's consent to plaintiff's settling the action against the Whitneys for the $20,000 offered by ACIA. Defendant indicated that it would not consent to the settlement, stating that ACIA's interpretation of its policy was not in accordance with Michigan law and that ACIA was liable for the full $25,000.

---

[1] We infer this from allegations set forth in plaintiff's complaint.

Despite defendant's refusal to grant its consent, plaintiff then settled his suit against the Whitneys for the $20,000 offered by ACIA. Plaintiff informed defendant of the settlement, and simultaneously requested arbitration, stating that because the parties were "unable to come to an agreement on this matter, [plaintiff is] requesting arbitration of [plaintiff's] underinsured motorist claim." Defendant refused to submit the matter to arbitration, emphasizing, inter alia, that plaintiff had violated the terms of the policy by settling the suit without defendant's consent.

Plaintiff then filed the present action, alleging, in essence, breach of contract. The goal of plaintiff's action was not an award against defendant, but submission of the matter to arbitration. Toward this end, and as relevant to the instant appeal, plaintiff argued that his settlement did not fall within the "settlement without insurer's consent" exclusion because defendant had unreasonably withheld its consent to the settlement in light of the fact that ACIA had offered its policy limit. In the alternative, plaintiff contended that even if his settlement constituted breach of contract, he was still entitled to arbitration under the terms of the policy. Defendant moved for summary disposition on the ground that plaintiff had breached the contract by failing to obtain defendant's consent to the settlement, and had thereby forfeited any right to arbitration. The court granted defendant's motion, and plaintiff now appeals as of right. Our review is de novo. *Omnicom of Michigan v Giannetti Investment Co*, 221 Mich App 341, 344; 561 NW2d 138 (1997).

On appeal, plaintiff again raises the arguments set forth above. We first address plaintiff's contention that, regardless of whether his settlement of the

action against the Whitneys fell within the "settlement without insurer's consent" exclusion, he is still entitled to arbitration of his claim under the terms of the policy.

In making this argument, plaintiff relies primarily on this Court's decision in *Lee v Auto-Owners Ins Co*, 201 Mich App 39; 505 NW2d 866 (1993). In *Lee*, the insured was injured in an automobile accident and subsequently settled his suit against the allegedly negligent driver of the automobile. The insured had in place underinsured motorist coverage similar to that presently in issue, and the policy apparently had a similar exclusion requiring the insured to receive the consent of his insurer before settling a suit. The insured did not receive the prior consent of his insurer to the settlement. Indeed, he did not notify the insurer at all. *Id.*, pp 40-41. This Court held that the insured's "failure to abide by the conditions of the policy does not prevent him from recovering under the policy . . . . [The insured] still has a right under the policy to compel arbitration of his claim . . . ." *Id.*, p 43. Thus, *Lee* does appear to support plaintiff's contention.

Unfortunately, from plaintiff's perspective, this *Lee* decision, which we will call *Lee I*, was subsequently vacated and remanded by the Supreme Court. 445 Mich 908 (1994). On remand, in *Lee II*, this Court came to the opposite conclusion, summarizing its holding by stating that the insured "is not entitled to arbitration in light of the fact that he failed to abide by the terms of his insurance contract; specifically, he initiated a lawsuit and settlement with the third-party tortfeasor without the knowledge or approval of defendant insurance company." *Lee v Auto-Owners*

*Ins Co (On Remand)*, 208 Mich App 207, 209; 527 NW2d 54 (1994). Thus, this Court reversed its prior ruling and held that conduct such as plaintiff's would bar arbitration of plaintiff's claim.

Unfortunately, from defendant's perspective, the Supreme Court subsequently vacated and remanded *Lee II*, as well. 451 Mich 874 (1996). In *Lee III, Lee v Auto-Owners Ins Co (On Second Remand)*, 218 Mich App 672; 554 NW2d 610 (1996), this Court framed the issue somewhat differently. Addressing directly the insured's contention that because the insurer could show no prejudice resulting from the insured's settlement of the action arbitration was still available to the insured, this Court stated that where an exclusion is clear, an insurer need show no actual prejudice to justify enforcement of the exclusion. *Id.*, pp 675-676. Thus, because the insured had clearly committed acts excluding coverage, this Court held that arbitration was not available to the insured and that summary disposition in favor of the insurer was appropriate. *Id.*, p 676.[2]

Unfortunately, from our perspective, the panels in *Lee I, Lee II*, and *Lee III* did not set forth the relevant policy language of the underinsured motorist policy then in issue. By "the language in issue," we refer to the policy language addressing the circumstances in which arbitration was available to the parties in the *Lee* case. As explained in *Port Huron Area School Dist v Port Huron Ed Ass'n*, 426 Mich 143, 150-151; 393 NW2d 811 (1986), the scope of an arbitrator's remedial authority is limited to the contractual agree-

---

[2] Neither party applied for leave to appeal this Court's decision in *Lee III*. Thus, we are confident that there will be no *Lee IV*.

ment of the parties. Parties may agree to arbitrate disputes covering a broad range of issues or they may agree to arbitrate only one or a handful of narrow issues.

We consider this oversight on the part of the *Lee* panels particularly significant because, from our review of the case law, we have ascertained that arbitration agreements set forth in uninsured and underinsured motorist policies are fairly standard, and are of two varieties—one broad, one narrow. See, e.g., *Klimek v Horace Mann Ins Co*, 14 F3d 185, 187-188 (CA 2, 1994) (contrasting what this Court has termed the broad and narrow versions of arbitration provisions used in uninsured and underinsured motorist policies). The arbitration clause in the policy presently in issue is of the narrow variety, providing as follows: "If [the insurer] and an 'insured' disagree *whether the insured is legally entitled to recover damages from the owner or driver of an 'uninsured motor vehicle'* or *do not agree as to the amount of damages*, either party may make a written demand for arbitration" (emphasis supplied). Thus, there are two issues that the instant plaintiff and defendant have agreed to arbitrate: liability of the alleged tortfeasor and the extent of damages of the insured.

In contrast, some uninsured and underinsured motorist policies provide that a broad range of issues may be arbitrated, essentially, any dispute whatsoever pertaining to coverage. An example of this type of arbitration clause is discussed in *Maryland Casualty Co v Seidenspinner*, 181 Wis App 2d 950; 512 NW2d 186 (1994), in which the parties disputed whether arbitration of an insured's claim against its underinsured motorist carrier was appropriate in light of the

fact that the insured had allegedly violated a policy exclusion (which is, notably, the identical issue raised in the present case). The arbitration clause in the *Seidenspinner* case provided that arbitration was available where the insured and insurer "do not agree [w]hether [the insured] is legally entitled to recover damages *under this part*," that is, the uninsured and underinsured motorist component, of the policy. *Id.* (emphasis supplied).

Under this broad provision, not only are disputes pertaining to the liability of the alleged tortfeasor and the extent of the insured's damages arbitrable, but *any* dispute pertaining to coverage is arbitrable, and the *Seidenspinner* Court so held. The *Seidenspinner* Court adverted to the distinction drawn in the present decision in the penultimate paragraph of its opinion, stating that if the insurer "had wanted to arbitrate only issues about the causal negligence of underinsured motorists and damages, it could have so specifically provided in its insurance contract." *Id.* Accordingly, the court ruled that the insurer's contention that an exclusionary clause barred arbitration of the insurer's claim, which, again, is the identical issue raised in our case, would have to be decided by an arbitration panel, as opposed to the court, because that is what the arbitration provision demanded. *Id.* See also *Preziose v Lumbermen's Mut Casualty Co*, 152 Vt 604; 568 A2d 397 (1989).

Thus, our discussion of similar cases from other jurisdictions is not so much a tangent as a secant, bringing us back to the dilemma created by the *Lee* decisions. *Lee III* held that where an insured is alleged to have violated a policy exclusion, the court may determine whether such a violation occurred

and, if so, grant summary disposition of the insured's claim in favor of the insurer. *Lee III, supra,* pp 675-676. However, by failing to articulate the particular arbitration clause the decision was based on, *Lee III* would seem to stand for the broad proposition that this is always the case, that such disputes are universally matters for the court and never matters for arbitration.

In light of our discussion of the differing policy language that may be at issue, we decline to construe *Lee III* so broadly. Because of the conclusion reached in *Lee III*, we infer that the arbitration provision there in issue was of the narrow variety, though we cannot deduce its precise parameters. Presumably, the arbitration provision that was examined in the *Lee* decisions did not include as an arbitrable issue the question whether a particular exclusion applied. Accordingly, this was a question properly brought in a court of law. The panel that decided *Lee III* concluded that the insured had come under an exclusion, and that the insured was, therefore, not entitled to arbitrate his claim against his insurer.

The present case involves a similar, narrow arbitration provision. Pursuant to this provision, the only issues that the parties agreed to arbitrate are the issues of the legal liability of the alleged tortfeasor and the extent of the insured's damages. Neither of these matters is presented in the present appeal. Rather, we are asked simply to determine whether an exclusion applies, which is to say, we must determine whether coverage exists and only then, if at all, will the parties reach the questions of liability and damages. Had the arbitration provision in issue been of the broad variety, providing that disputes pertaining

to coverage "under this part" or the like were arbitrable, the question whether an exclusion applies would properly be one for arbitration. However, given that the question presented does not concern a matter that the parties have agreed to arbitrate, this Court properly addresses it.

That being said, pursuant to *Lee III*, plaintiff will have no right to arbitration should this Court conclude that he violated the exclusionary clause of the underinsured motorist policy issued by defendant. As noted above, though *Lee I* stated that arbitration was available even after this Court had concluded that a similar exclusionary clause had been violated, that decision was subsequently vacated by the Supreme Court. 445 Mich 908. Therefore, should this Court determine that the exclusionary clause was violated and that no exception to that exclusionary clause applies, issues discussed immediately below, plaintiff will have effectively forfeited his right to arbitration, a conclusion dictated by the terms of the policy. *Lee III, supra.*

Plaintiff's conduct falls squarely within the policy exclusion. When reviewing an insurance policy, this Court must read the contract as a whole to determine whether the policy is clear and unambiguous on its face. *Taylor v Blue Cross & Blue Shield of Michigan*, 205 Mich App 644, 649; 517 NW2d 864 (1994). The policy in force between the instant parties provides that "[t]his insurance does not apply to . . . [a]ny claim settled without [defendant's] consent," a clear and unambiguous provision, and the balance of the policy is equally accessible. Plaintiff admittedly settled his claim against the Whitneys without first obtaining the consent of defendant. Clear exclusions set forth in an

insurance policy must be given effect. *Allstate Ins Co v Keillor (After Remand)*, 450 Mich 412, 417; 537 NW2d 589 (1995). Therefore, in the absence of persuasive argument why this exclusion should not be enforced as written, plaintiff effectively forfeited his underinsured motorist coverage upon settling his claim against the Whitneys without first obtaining the consent of defendant, his insurer.

As an argument why the exclusion should not be enforced as written, plaintiff submits that because the insurer's withholding of consent was allegedly unreasonable, defendant effectively "waived" its right to withhold consent. Plaintiff argues that because he settled his claim against the Whitneys for the limit of the Whitneys' liability coverage,[3] defendant's withholding of its consent was unreasonable per se and should not be recognized by this Court as having legal efficacy. Plaintiff, thus, asks this Court to require an insurer to act "reasonably" when withholding its consent to a settlement by its insured.

We decline to impute a "reasonableness" requirement in the policy provision mandating that the insured first obtain the consent of the insurer before settling a claim against an alleged tortfeasor. As explained by defendant in its brief on appeal, defendant has a legitimate interest in protecting its

> subrogation interest. Under the uninsured and underinsured
> motorist portion of the policy, once payment is made pursuant to that portion of the policy, the insurance company is
> then subrogated to any rights which the insured may have

---

[3] Defendant contests this assertion. However, in light of our resolution of this issue, it is unnecessary for us to consider whether ACIA was obligated to pay on behalf of the Whitneys $25,000 or only $20,000, as maintained by plaintiff.

against the alleged tortfeasor. If in fact the plaintiff in this case settled with the alleged tortfeasor and the tortfeasor took a release executed by the insured which relieved the tortfeasor from further liability, that release has prejudiced forever the right of [defendant] to proceed against the tortfeasor in the event that Farm Bureau is required to pay under the uninsured [or underinsured] motorist portion of the policy. This is part of the rationale for requiring consent by [defendant]. [Accord *Lee III, supra,* pp 675-676; *Flanary v Reserve Ins Co,* 364 Mich 73, 75; 110 NW2d 670 (1961).]

This is a weighty consideration, a necessary complement to the insured's right to recover from its insurer, and one not to be lightly ignored or dispensed with.

In *Lee III, supra,* this Court was faced with a similar issue. The insured claimed that unless an insurer was "prejudiced" by the act of its insured in settling a claim, the insurer could not enforce the policy exclusion requiring the consent of the insurer. Thus, the insured sought to assert his right to recover against his insurer despite the fact that the insured had undermined the insurer's opportunity to pursue its subrogation interest. This Court refused to recognize the insured's claim, holding that clear and specific policy exclusions were to be given effect "without incorporating a condition of prejudice." *Lee III, supra,* p 676.

Similarly, we continue to give the clear and specific policy exclusion in issue effect without incorporating a condition of reasonableness. To the extent that the concepts of "prejudice" and "reasonableness" differ in the instant context, we believe the plaintiff's argument in the present case to be weaker even than the insured's position in the *Lee* decisions. An insurer could conceivably refuse to consent to its insured's settlement where to accede to the settlement would

not prejudice the insurer. However, it is difficult to conceive how an insurer's refusal to consent could be described as "unreasonable" in light of the fact that its insured, at any time before settling the claim, could have forced arbitration of the entire matter with a simple written demand for arbitration.

In the instant case, defendant could have gained no advantage over plaintiff, and plaintiff could have suffered no loss with respect to his claim against the Whitneys due to defendant's refusal to consent for this very reason: plaintiff could easily have initiated arbitration proceedings. It is plaintiff's impatience that reduced his relationship with his insurer to a zero-sum game, in which plaintiff's gain was necessarily his insurer's loss. This outcome could have been avoided had plaintiff submitted the matter to arbitration, at which point plaintiff's opportunity to recover against the Whitneys would have been subrogated to defendant. Assuming plaintiff prevailed before the arbitration panel, defendant would then have been obligated to abide by the arbitration award or face suit by plaintiff in a court of law to enforce the award. In short, we do not find to be persuasive plaintiff's contention that the policy exclusion should not be enforced as written.

In summary, the parties agreed to arbitrate only two specifically articulated issues. Questions pertaining to the applicability of exclusionary clauses are not among these issues, meaning this Court may properly resolve the instant dispute. Plaintiff's conduct clearly violated the exclusion providing that coverage did not apply to any claim settled without the insurer's consent. While plaintiff contends that defendant's action was "unreasonable," neither "lack of prejudice" nor

"lack of reasonableness" is a sufficient ground for ignoring clear policy language. This is especially true in light of the fact that plaintiff could have submitted the matter to arbitration, without defendant's consent, at any point before settling the case. Therefore, because plaintiff's uninsured and underinsured motorist coverage does not apply to "[a]ny claim settled without [defendant's] consent," it does not apply under the present circumstances. Plaintiff forfeited his right to arbitration by settling his claim against the Whitneys in violation of the policy.

Affirmed.