Todd SUNDERLAND

v.

ALLSTATE INSURANCE COMPANY.

No. 96–486–Appeal.

Supreme Court of Rhode Island.

July 23, 1998.

Lawrence J. Cappuccio, Westerly, for Plaintiff.

Paul A. Anderson, Providence, for Defendant.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS and GOLDBERG, JJ.

## OPINION

GOLDBERG, Justice.

This case came before the Supreme Court on the appeal of the plaintiff, Todd Sunderland (Sunderland or Todd), and the cross-appeal of the defendant, Allstate Insurance Company (Allstate). Both parties appeal from a Superior Court judgment confirming an arbitrators' award and allege errors relating to the methodology used by the trial justice in calculating prejudgment interest on an uninsured-motorist claim. We discern no reversible error in the trial justice's calculations and therefore affirm the judgment below.

On August 21, 1991, Sunderland sustained serious bodily injuries when he was struck by an automobile operated by Joseph Victoria and owned by Linda Victoria (collectively the Victorias). At the time of the accident the Victorias' vehicle was insured by a motor vehicle policy issued by Allstate, which provided for a $50,000 limit of liability coverage. It was soon learned, however, that Sunderland's damages would exceed the Victorias' liability limit and that other insurance, namely, the underinsured-motorist policies held by Sunderland's father and two brothers with whom he lived, would become necessary to compensate Sunderland fully for the damages he had suffered.

Robert Sunderland, Todd's father (father), held an Allstate insurance policy providing for $25,000 in medical-payment coverage and $50,000 in underinsured-motorist coverage. Likewise, Robert Sunderland, Jr., one of Todd's brothers (brother Robert), held an Allstate insurance policy providing for $100,000 in underinsured-motorist coverage. Last, Todd was covered pursuant to an insurance policy issued by Progressive Casualty (Progressive) to another brother, Scott Sunderland (brother Scott), which provided for $25,000 in underinsured-motorist coverage.

On or about October 25, 1991, Allstate paid Sunderland the $50,000 liability limit pursuant to the Victorias' policy in exchange for Sunderland's agreement to release the Victo-

rias from all future liability. Shortly thereafter, Sunderland obtained written permission from Allstate to settle his claim against the Victorias while reserving his right to proceed against Allstate pursuant to the underinsured-motorist policies issued to his father and his brother Robert. During the same period Sunderland also wrote to Progressive in order to obtain its written consent to settle the claim against the tortfeasor Victoria, apparently also reserving the right to proceed against Progressive pursuant to his brother Scott's underinsured-motorist policy. It is significant that Progressive never gave its written consent. Progressive later denied Sunderland's claim for underinsured-motorist benefits pursuant to his brother Scott's Progressive policy on the basis of his settlement with the Victorias without written consent. On September 16, 1992, Allstate paid Sunderland $25,000 in medical-payment benefits pursuant to his father's Allstate policy.

An arbitration hearing was held on October 13, 1994, wherein one of the arbitrators summarized its duty: "[T]he parties agree that the function of the arbitrators today is to make an award for the total damages and then indicate in that award whether it's—— whether we reduced those damages by the $75,000 previously received or whether it's a gross award." Following the hearing the arbitrators' awarded Sunderland $125,000 in compensatory damages and specifically noted that this amount "represents the total compensatory award without reduction for amounts previously paid and without addition for statutory interest." Thereafter, Allstate paid Sunderland $59,139.90. This amount represented the total award ($125,-000), less prior payments ($75,000), less Progressive's proportionate share that it would have contributed had Sunderland obtained its permission to settle with the Victorias (14.29 percent).[1] Allstate then added 38 per-

cent interest onto this amount for a total of $59,139.90.

On October 6, 1995, Sunderland filed a petition to confirm the arbitration award in Superior Court. On October 27, 1995, an order confirming the arbitration award was entered, and shortly thereafter Sunderland moved for entry of judgment. Allstate, however, objected to the entry of a monetary judgment, contending that it had already satisfied Sunderland's claim in full.

Following the submission of memoranda, a hearing was held before a trial justice of the Superior Court to determine the precise amount, if any, that remained due to Sunderland. Sunderland argued that the correct methodology to be used in determining prejudgment interest should be to calculate the interest from the entire $125,000 award for a subtotal of $172,500. Sunderland next claimed that only the $50,000 prior payment for liability should be deducted from this subtotal and then the remaining amount proportioned between the two applicable Allstate policies. Conversely, Allstate argued that its previous payment of $59,139.90 satisfied its obligation to Sunderland.

After hearing the parties' arguments, the trial justice entered an order reflecting the following computations:

| | |
|---|---|
| Arbitration Award | $125,000 |
| 52% Interest (8/21/91–1/11/96) | 70,000 [2] |
| | $195,000 |
| Setoffs | $ (50,000) |
| | (25,000) |
| | $120,000 |
| Interest Credits: | |
| $50,000 at 50% (10/24/91–1/11/96) | (25,000) |
| $25,000 at 39% (9/16/92–1/11/96) | ( 9,750) |
| | $ 82,250 |
| Pro Rata Reduction | x 85.71% |
| | $ 73,071.42 |
| Post–Arbitration Payment | (59,139.90) |
| Amount Due to Sunderland | $ 13,931.52 |

**1.** As reflected in the trial justice's order, *infra,* Allstate was responsible only for its pro rata share of the total underinsured-motorist benefits available, namely 85.71 percent. This figure represents the total amount of underinsured-motorist benefits that Allstate was responsible for, $150,000 (father's policy and brother Robert's policy), divided by the total amount of underinsured-motorist benefits available, $175,000 (father's policy, brother Robert's policy, and brother Scott's policy).

**2.** We note that $125,000 × 52 percent = $65,-000. Despite this arithmetic error we are not persuaded that this case must be remanded to the Superior Court since neither party has brought this error to our attention and since counsel for Allstate conceded during oral argument that the trial justice's determination of prejudgment interest complied with our most recent pronouncements.

Judgment entered in favor of Sunderland for $13,931.52, and both parties filed timely notices of appeal.

Allstate's sole issue on appeal concerns the methodology used by the trial justice to calculate prejudgment interest. However, during oral argument counsel for Allstate acknowledged that even though the trial justice did not have the benefit of our recent opinions in *Merrill v. Trenn,* 706 A.2d 1305 (R.I. 1998), and *Metropolitan Property and Casualty Insurance Co. v. Tanasio,* 703 A.2d 1102 (R.I.1997), her prejudgment interest calculations substantially complied with the dictates of these cases. We agree and therefore deem further discussion of this issue unnecessary.

■ In his appeal Sunderland raises three issues that also related in large part to the methodology used by the trial justice to calculate prejudgment interest. Sunderland first argues that the trial justice erred in reducing the arbitrators' award by Progressive's proportionate share of underinsured-motorist benefits, thereby preventing full recovery and violating public policy. To substantiate this claim Sunderland cites several cases in which this Court has invalidated insurance clauses that purport to limit recovery because of the availability of other insurance coverage. Furthermore Sunderland cites G.L.1956 § 27–7–2.1(a), which provides in part:

> "No policy insuring against loss resulting from liability imposed by law for * * * bodily injury, or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, for bodily injury or death in limits set forth in each policy, but in no instance less than the limits set forth in § 31–31–7, or § 31–32–24 under provisions approved by the insurance commissioner, for the protection of persons

insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and hit and run motor vehicles because of * * * bodily injury, sickness, or disease, including death, resulting therefrom."

However, in the circumstances presented by this case we are of the opinion that Sunderland's reliance is misplaced.

At the time of the accident Sunderland was covered by underinsured-motorist benefits totaling $175,000. This amount represents $150,000 in underinsured-motorist coverage through the Allstate policies of Sunderland's father and his brother Robert, as well as $25,000 in underinsured-motorist coverage through the Progressive policy of his brother Scott. The record demonstrates that Sunderland was well aware of Progressive's requirement that he obtain its written permission prior to settling with the Victorias. In fact the record evinces that Sunderland did indeed write to Progressive, seeking such permission. *See LeFranc v. Amica Mutual Insurance Co.,* 594 A.2d 382, 383–84 (R.I.1991); *Gosselin v. Automobile Club Insurance Co.,* 574 A.2d 1243, 1245–46 (R.I.1990). *See also* § 27–7–2.1(h) (superseding *LeFranc* and *Gosselin* ).[3] Sunderland, however, did not obtain Progressive's permission to settle with the Victorias, and as a result the trial justice reduced the arbitrators' award by Progressive's pro rata portion of underinsured-motorist benefits. Since the triggering factor preventing full recovery was Sunderland's failure to obtain Progressive's written consent, we conclude that the trial justice's pro rata reduction was not a violation of public policy and was particularly appropriate in light of the joint-tortfeasor statute.

■ Sunderland next argues that the trial justice erred in reducing the arbitrators' award by the $25,000 in medical benefits that he received from his father's Allstate insurance policy. Specifically Sunderland argues that the arbitrators in this case had the duty to determine the amount of underinsured-

---

3. In relevant portion G.L.1956 § 27–7–2.1(h) provides:

"Release of the tortfeasor with the consent of the company providing the underinsured cov-

erage shall not extinguish or bar the claim of the insured against the underinsurance carrier regardless of whether the claim has been liquidated."

**56**

motorist benefits to which Sunderland was entitled, and since medical-payment coverage is separate and distinct from underinsured-motorist coverage, consideration of the prior medical benefits should have been barred by the collateral-source doctrine. However, were we to accept Sunderland's argument, we would be endorsing a method of calculation that encourages double-recovery, which is contrary to our previous opinions and contrary to the purpose of the underinsured-motorist statute. *See Merrill v. Trenn,* 706 A.2d 1305 (R.I.1998). We decline to do so.

Finally, Sunderland claims that the arbitrators' duty in this case was limited to determining "how much Allstate must pay Sunderland in underinsured motorist benefits under the Allstate policies." Thus Sunderland argues the $125,000 award represents the sum by which the Victorias were underinsured, and consequently the trial justice erred in reducing the arbitrators' award. The transcript from the arbitration hearing, however, as well as the arbitrators' decision itself, refutes this argument.

During the arbitration hearing one of the arbitrators stated:

"[a]nd the parties agree that the function of the arbitrators today is to make an award for the total damages and then indicate in that award whether it's— whether we reduced those damages by the $75,000 previously received or whether it's a gross award. We will do that; the arbitrators will do that."

Thereafter both parties agreed to the arbitrator's statement, and Sunderland was awarded "[t]he amount of $125,000 represent[ing] the total compensatory award without reduction for amounts previously paid and without addition for statutory interest." Relying upon this colloquy and on the arbitrators' written decision, we conclude that Sunderland's final argument is meritless.

Consequently for the foregoing reasons the appeals by Sunderland and Allstate are both denied and dismissed. The judgment appealed from is affirmed, and the papers in this case are remanded to the Superior Court.