599 S.E.2d 720

**HORACE MANN INSURANCE COMPANY, Plaintiff Below, Appellee,**

v.

**Charles W. ADKINS, Jr., Individually and as Administrator of the Estate of Joseph Cory Adkins, Deceased, and Sandra K. Adkins, Defendants Below, Appellants.**

No. 31592.

Supreme Court of Appeals of West Virginia.

Submitted: March 31, 2004.

Filed: June 30, 2004.

Maynard, C.J., dissented and filed opinion.

298

Charles D. Perfater, Esq., Law Office of Charles D. Perfater, Charleston, for the Appellants.

Robert A. Lockhart, Esq., Daniel R. Schuda, Esq., Schuda & Associates, PLLC, Charleston, for the Appellee.

DAVIS, Justice.

The appellants herein and defendants below, Charles W. Adkins, Jr., individually and in his administrative capacity, and his former wife, Sandra K. Adkins [hereinafter collectively referred to as "Mr. Adkins"], appeal from an order entered December 27, 2002, by the Circuit Court of Fayette County. By that order, the circuit court granted summary judgment to the appellee herein and plaintiff below, Horace Mann Insurance Company [hereinafter referred to as "Horace Mann"], concluding that Horace Mann was not obligated to pay underinsured motorist benefits [hereinafter referred to as "UIM benefits"] to Mr. Adkins because he did not, in settling his underlying claim, exhaust the available limits of liability coverage. On appeal to this Court, Mr. Adkins contends that the circuit court erred by so ruling. Upon a review of the parties' arguments, appellate record, and pertinent authorities, we reverse the decision of the Fayette County Circuit Court, and remand this case for further proceedings consistent with this opinion.

## I.

### FACTUAL AND PROCEDURAL HISTORY

On July 22, 2000, Mr. and Ms. Adkins' son, Joseph Cory Adkins,[1] was killed in an automobile accident on U.S. Route 19 in Fayette County, West Virginia. The accident occurred when the vehicle in which Mr. and Ms. Adkins' son was riding, which was driven by minor Holly Jeffries [hereinafter referred to as "Miss Jeffries"], attempted to enter U.S. Route 19 and pulled into the path of oncoming traffic, namely a vehicle driven by Dr. James P. Brown [hereinafter referred to as "Dr. Brown"]. The collision was fatal to all four minor occupants of the Jeffries vehicle, while Dr. Brown and his wife, Lynn Brown [hereinafter referred to as "Mrs. Brown"],[2] who owned the vehicle Dr. Brown was driving and who was a passenger therein at the time of the accident, sustained various non-life threatening injuries.

Following these events, Miss Jeffries' motor vehicle insurer, Newark Insurance Company, filed an interpleader action in the Circuit Court of Fayette County against the estates of the four minor occupants of the Jeffries' vehicle and tendered its policy limits of $100,000. In that proceeding, Mr. Adkins, as administrator of his son's estate, filed a cross-claim against the insurers of Dr. Brown and Mrs. Brown. At the time of the accident, Dr. Brown had policies of insurance with Shelby Insurance Company with coverage limits as follows: $300,000 liability limits under a policy of motor vehicle insurance and $1,000,000 limits under a policy of umbrella insurance.[3] Similarly, Mrs. Brown had a policy of motor vehicle insurance with Allstate Insurance Company with liability limits of $300,000. Upon filing his cross-claim, Mr. Adkins also provided notice of a potential claim for underinsured motorist [UIM] benefits to Horace Mann Insurance Company, with whom he and Ms. Adkins maintained separate policies of motor vehicle insurance.[4]

1. Joseph Cory Adkins was twelve years old at the time of the aforementioned accident.

2. Dr. and Mrs. Brown were not married at the time of the accident.

3. "Umbrella insurance" is "[i]nsurance that is supplemental, providing coverage that exceeds the basic or usual limits of liability." Black's Law Dictionary 808 (7th ed.1999).

4. The UIM coverage limits contained in the Adkins' insurance policies were $20,000 per per-

Ultimately, the Browns' insurers settled with the four estates, which settlements were approved by the circuit court. Dr. Brown's insurer, Shelby Insurance Company, tendered $500,000, and Mrs. Brown's insurer, Allstate Insurance Company, tendered $255,000. The Adkins' insurer, Horace Mann, consented to such settlements and waived its right of subrogation, but reserved its right to assert defenses to the Adkins' UIM claim. Following the effectuation of these settlements, Horace Mann filed a declaratory judgment proceeding against Mr. and Ms. Adkins to determine its duty to pay UIM benefits under their policies of insurance. In support of its contention that it was not obligated to pay such benefits, Horace Mann relied upon a provision contained in the Adkins' policies which states that

> [t]here is no [UIM bodily injury] coverage until the **insured's** damages exceed the limits of all bodily injury liability insurance policies or bonds applicable to the accident and those limits of liability that apply to the **bodily injury** have been used up by payments of judgments or settlements.

Based upon this language, Horace Mann moved for summary judgment, contending that because the Adkins had settled for less than the full amount of liability limits provided by the Browns' insurers, they had not sufficiently exhausted all applicable liability coverages so as to activate their UIM coverage under their Horace Mann policies. The Adkins maintained their entitlement to such UIM benefits, arguing that because Miss Jeffries was at fault for the accident, and because Dr. Brown was not culpable, the only insurance applicable to the accident was the policy insuring Miss Jeffries, the limits of which were paid to the four estates. Following a hearing on Horace Mann's motion, the circuit court, by order entered December 27, 2002, awarded summary judgment to Horace Mann, concluding that "[t]he policies issued by Horace Mann to Mr. and Mrs. Adkins include a provision requiring that all liability policies be exhausted before any UIM coverage is triggered" and that "[i]n this case,

neither Mrs. Brown's liability coverage with Allstate, nor Mr. Brown's liability coverage with Shelby, were exhausted. . . . Accordingly, UIM coverage under the Horace Mann policies was not triggered." The circuit court additionally found that such provision was clear and unambiguous and did not violate the requirements of W. Va.Code § 33–6–31 (1998) (Repl.Vol.2003).[5] From this adverse ruling, Mr. Adkins appeals to this Court.

## II.

### STANDARD OF REVIEW

 On appeal to this Court, the parties ask us to ascertain the proper construction to be accorded to an exclusion contained in a policy of motor vehicle insurance. In this regard, we have held that "[d]etermination of the proper coverage of an insurance contract when the facts are not in dispute is a question of law." Syl. pt. 1, *Tennant v. Smallwood*, 211 W.Va. 703, 568 S.E.2d 10 (2002). "Where the issue on an appeal from the circuit court is clearly a question of law . . ., we apply a *de novo* standard of review." Syl. pt. 1, in part, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995). Thus, "[t]he interpretation of an insurance contract, including the question of whether the contract is ambiguous, is a legal determination that, like a lower court's grant of summary judgement, shall be reviewed *de novo* on appeal." Syl. pt. 2, *Riffe v. Home Finders Assocs., Inc.*, 205 W.Va. 216, 517 S.E.2d 313 (1999).

 Likewise, this case comes to us procedurally as an appeal from an order granting summary judgment. As we noted above with respect to our review of questions of law, we apply a plenary review to summary judgment decisions. "A circuit court's entry of summary judgment is reviewed *de novo*." Syl. pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). Within this context, we will proceed to consider the parties' arguments.

---

son/$40,000 per occurrence.

5. For the pertinent language of W. Va.Code § 33–6–31(b) (1998) (Repl.Vol.2003), see generally Section III, *infra*.

## III.

## DISCUSSION

The sole issue presented for resolution by this Court concerns the interpretation of the exclusionary language contained in the Horace Mann insurance policy. In short, we are asked to determine whether the exclusionary language, which directs its insured to exhaust all applicable policies of liability insurance before he/she may collect underinsured motorist [UIM] benefits under the subject Horace Mann policy, requires the actual exhaustion of all applicable coverages or whether a constructive exhaustion of such coverages will suffice. During its review of this exclusion, the circuit court strictly construed the policy language as requiring an actual exhaustion of all applicable policies of insurance. Thus, because Mr. Adkins settled with the Browns' insurers for less than the full policy limits, the circuit court determined that Mr. Adkins had not satisfied the exhaustion requirement and therefore could not recover UIM benefits under his Horace Mann policy.

In his appeal to this Court, Mr. Adkins urges the adoption of an offset rule, or constructive exhaustion interpretation of the contested exclusionary language. Under such a construction, an insured who settles with a tortfeasor's insurer for less than the full policy limits would nevertheless be treated as having settled for the full policy limits. Having thus attributed the full policy limits of the tortfeasor's insurance to the insured, he/she would then have constructively exhausted all applicable coverages in satisfaction of the requirements of the exhaustion clause. As a result, Mr. Adkins argues, the insured should then be permitted to collect UIM benefits under his/her own policy of insurance because he/she would have exhausted, albeit constructively, all applicable liability coverages.

Horace Mann rejects the interpretation of its exhaustion clause proposed by Mr. Adkins. In this regard, Horace Mann contends that the circuit court properly determined that the language of the subject exclusion is plain, and that it clearly requires the actual exhaustion of all applicable liability coverages before its insured may recover UIM benefits.

The language of the exclusion at issue in this appeal provides that

> [t]here is no [UIM bodily injury] coverage until the **insured's** damages exceed the limits of all bodily injury liability insurance policies or bonds applicable to the accident and those limits of liability that apply to the **bodily injury** have been used up by payments of judgments or settlements.

In order to resolve the issue presently before us, however, we will have to ascertain the meaning of this policy provision.

When deciding cases concerning the language employed in an insurance policy, we look to the precise words employed in the policy of coverage. Ordinarily, we accord the language of an insurance policy its common and customary meaning. "Language in an insurance policy should be given its plain, ordinary meaning." Syl. pt. 1, *Soliva v. Shand, Morahan & Co., Inc.*, 176 W.Va. 430, 345 S.E.2d 33 (1986). In this regard, we accept the plain meaning of policy provisions without interpretation or construction, except where ambiguity warrants such further consideration of the policy language. "Where provisions in an insurance policy are plain and unambiguous and where such provisions are not contrary to a statute, regulation, or public policy, the provisions will be applied and not construed." Syl. pt. 2, *Shamblin v. Nationwide Mut. Ins. Co.*, 175 W.Va. 337, 332 S.E.2d 639 (1985). *Accord* Syl., *Keffer v. Prudential Ins. Co. of America*, 153 W.Va. 813, 172 S.E.2d 714 (1970) ("Where the provisions of an insurance policy contract are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended."). On the other hand, "[w]henever the language of an insurance policy provision is reasonably susceptible of two different meanings or is of such doubtful meaning that reasonable minds might be uncertain or disagree as to its meaning, it is ambiguous." Syl. pt. 1, *Prete v. Merchants Prop. Ins. Co. of Indiana*, 159 W.Va. 508, 223 S.E.2d 441 (1976). *See also* Syl. pt. 4, *National Mut. Ins. Co. v. McMahon & Sons, Inc.*, 177 W.Va.

734, 356 S.E.2d 488 (1987) ("It is well settled law in West Virginia that ambiguous terms in insurance contracts are to be strictly construed against the insurance company and in favor of the insured.").

■ Although we have recognized, on numerous occasions, the authority of an insurer to incorporate exclusions into its policies of insurance,[6] we nevertheless have correspondingly recognized that insurance policies are, generally, unilaterally drafted by the insurer. Accordingly, we generally have held that such exclusions should be liberally construed in favor of the insured in order to provide him/her with the full measure of coverage that he/she contemplated when purchasing the subject policy. "Where the policy language involved is exclusionary, it will be strictly construed against the insurer in order that the purpose of providing indemnity not be defeated." Syl. pt. 5, *National Mut. Ins. Co. v. McMahon & Sons, Inc.*, 177 W.Va. 734, 356 S.E.2d 488. *See also* Syl. pt. 9, *id.* ("Where ambiguous policy provisions would largely nullify the purpose of indemnifying the insured, the application of those provisions will be severely restricted.").

Reviewing the language of the exclusion at issue herein in the context of this interpretive rubric, the exhaustion clause incorporated by Horace Mann into the Adkins' policies of insurance appears to be facially capable of but one construction: that all applicable policies of liability coverage must be exhausted before an insured may recover UIM benefits thereunder. What such a construction fails to take into account, however, is the nature and purpose of UIM coverage and the attendant public policy considerations which underlie the creation of underinsured motorist benefits and promote the swift and efficient resolution of contested cases.

Unique among the types of motor vehicle coverage available in this State, UIM coverage, unlike UM and liability coverages, is optional insurance that is not statutorily required.[7] "Underinsurance coverage is an optional coverage that an insure[d] may purchase[.]" *Castle v. Williamson*, 192 W.Va. 641, 647, 453 S.E.2d 624, 630 (1994). *Accord Imgrund v. Yarborough*, 199 W.Va. 187, 192–93, 483 S.E.2d 533, 538–39 (1997) (noting that "*underinsured* motorist coverage is optional *and not legally required*" (emphasis in original; citations omitted)).[8] UIM coverage is intended to provide excess coverage to com-

---

6. *See, e.g.,* W. Va.Code § 33–6–31(k) (1998) (Repl.Vol.2003) ("Nothing contained herein shall prevent any insurer from also offering benefits and limits other than those prescribed herein, nor shall this section be construed as preventing any insurer from incorporating in such terms, conditions and exclusions as may be consistent with the premium charged."); Syl. pt. 5, *Mitchell v. Broadnax*, 208 W.Va. 36, 537 S.E.2d 882 (2000) ("When an insurer incorporates, into a policy of motor vehicle insurance, an exclusion pursuant to W. Va.Code § 33–6–31(k) (1995) (Repl.Vol.1996), the insurer must adjust the corresponding policy premium so that the exclusion is 'consistent with the premium charged.' "), *superseded by statute as stated in Hutchens v. Progressive Paloverde Ins. Co.*, 211 F.Supp.2d 788 (S.D.W.Va.2002); Syl. pt. 3, *Deel v. Sweeney*, 181 W.Va. 460, 383 S.E.2d 92 (1989) ("Insurers may incorporate such terms, conditions and exclusions in an automobile insurance policy as may be consistent with the premium charged, so long as any such exclusions do not conflict with the spirit and intent of the uninsured and underinsured motorists statutes."); Syl. pt. 10, *National Mut. Ins. Co. v. McMahon & Sons, Inc.*, 177 W.Va. 734, 356 S.E.2d 488 (1987) ("An insurer wishing to avoid liability on a policy purporting to give general or comprehensive coverage must make exclusionary clauses conspicuous, plain,

and clear, placing them in such a fashion as to make obvious their relationship to other policy terms, and must bring such provisions to the attention of the insured.").

7. *See* W. Va.Code § 17D–4–2 (1979) (Repl.Vol. 2000) (establishing minimum limits of financial responsibility); W. Va.Code § 33–6–31(b) (1998) (Repl.Vol.2000) (requiring motorists to have uninsured motorist coverage in minimum amounts established by W. Va.Code § 17D–4–2, but not mandating underinsured motorist coverage); *Deel v. Sweeney*, 181 W.Va. 460, 463, 383 S.E.2d 92, 95 (1989) (same). *But see* W. Va. Code § 33–6–31(b) (requiring insurers to make an offer of underinsured motorist coverage in statutorily specified limits).

8. *See also* W. Va.Code § 33–6–31(b) (1998) (Repl. Vol.2000) (defining "[u]nderinsured motor vehicle" as "a motor vehicle ·with respect to the ownership, operation, or use of which there is liability insurance applicable at the time of the accident, but the limits of that insurance are either: (i) Less than limits the insured carried for underinsured motorists' coverage; or (ii) has been reduced by payments to others injured in the accident to limits less than limits the insured carried for underinsured motorists' coverage").

pensate an insured against losses for which there would otherwise be no coverage. "The purpose of optional underinsured motorist coverage is to enable the insured to protect himself, if he chooses to do so, against losses occasioned by the negligence of other drivers who are underinsured." *Deel v. Sweeney,* 181 W.Va. 460, 463, 383 S.E.2d 92, 95 (1989). In other words, "[u]nderinsurance coverage . . . is in the nature of excess coverage. It is not intended to be liability insurance." *Castle v. Williamson,* 192 W.Va. at 647, 453 S.E.2d at 630. *See also* Syl. pt. 4, in part, *State ex rel. Allstate Ins. Co. v. Karl,* 190 W.Va. 176, 437 S.E.2d 749 (1993) ("An underinsured motorist carrier occupies the position of an excess or additional insurer in regard to the tortfeasor's liability carrier, which is deemed to have the primary coverage.").

As optional coverage, an insured's interests in collecting the UIM benefits which he/she has elected to purchase and for which he/she has paid consideration are scrupulously guarded to accomplish the purpose of UIM coverage, which is to protect an insured from uncompensated loss. "*W. Va.Code,* 33–6–31(b), as amended, on . . . underinsured motorist coverage, contemplates recovery, up to coverage limits, from one's own insurer, of full compensation for damages not compensated by a negligent tortfeasor who at the time of the accident was an owner or operator of an . . . underinsured motor vehicle." Syl. pt. 4, in part, *State Auto. Mut. Ins. Co. v. Youler,* 183 W.Va. 556, 396 S.E.2d 737 (1990). *See also* Syl. pt. 4, in part, *Marshall v. Saseen,* 192 W.Va. 94, 450 S.E.2d 791 (1994) ("Under W. Va.Code, 33–6–31(b), an insurance carrier is statutorily required to pay to its insured, who has . . . underinsured motorist coverage, all sums which the insured is legally entitled to recover as damages from the owner or operator of an . . . underinsured motor vehicle. W. Va.Code, 33–6–31(b).". Such a result cannot be accomplished, however, if an insured is required to first exhaust all applicable policies

of liability insurance before he/she may recover UIM benefits for which he/she has paid and to which he/she would otherwise be entitled under the terms of his/her policy of insurance.

■ Also implicated by a strict facial construction and application of the subject policy exclusion is the public policy which favors settlements. As a means of promoting judicial economy and facilitating the resolution of contested cases, we long have noted that settlements are favored under the laws of this State. In this vein, we have held that "[t]he law favors and encourages the resolution of controversies by contracts of compromise and settlement rather than by litigation; and it is the policy of the law to uphold and enforce such contracts if they are fairly made and are not in contravention of some law or public policy." Syl. pt. 1, *Sanders v. Roselawn Memorial Gardens, Inc.,* 152 W.Va. 91, 159 S.E.2d 784 (1968). *Accord DeVane v. Kennedy,* 205 W.Va. 519, 534, 519 S.E.2d 622, 637 (1999) ("reiterating . . . that settlements are highly regarded and scrupulously enforced, so long as they are legally sound"); *Floyd v. Watson,* 163 W.Va. 65, 68, 254 S.E.2d 687, 690 (1979) ("The general rule is that a compromise or settlement agreement is favored by law[.]").[9] *Cf.* W. Va. Trial Court Rule 25.11 ("No party may be compelled by these rules, the court, or the mediator to settle a case involuntarily or against the party's own judgment or interest."); Syl. pt. 5, *State ex rel. Showen v. O'Brien,* 89 W.Va. 634, 109 S.E. 830 (1921) ("The rule that the courts favor compromise settlements by parties to prevent vexatious and expensive litigation only applies where the legal and equitable rights and interests of all parties concerned in a judgment are regarded and respected in good faith."). However, as noted above with respect to an insured's interest in collecting UIM benefits for which he/she has paid, the public policy in favor of settlements cannot be accomplished if an insured's settlement with a tortfeasor's insurer

---

9. *See also Woodrum v. Johnson,* 210 W.Va. 762, 782, 559 S.E.2d 908, 928 (2001) (recognizing "the public policy favoring settlements"); *Clark v. Kawasaki Motors Corp., U.S.A.,* 200 W.Va. 763, 768, 490 S.E.2d 852, 857 (1997) (referencing "the policy of this State favoring out-of-court settlements"); *Board of Educ. of McDowell County v. Zando, Martin & Milstead, Inc.,* 182 W.Va. 597, 604, 390 S.E.2d 796, 803 (1990) (acknowledging "the strong public policy favoring out-of-court resolution of disputes").

for less than full policy limits will effectively preclude him/her from receiving such UIM benefits because he/she has not exhausted all applicable policies of liability insurance.

Simply incorporating both of these policy considerations into our interpretation of the exhaustion clause, however, does not necessarily dictate that insureds should be permitted to settle for whatever policy limits they can garner in order to then reach their UIM benefits. Rather, we must be mindful of the risk of loss assumed by the insurers and their ability to incorporate exclusions into the policies of insurance which they sell. Thus, a balance between these competing interests must be achieved in order to maintain the equities of the parties while still upholding the spirit and intent of the exclusionary language for which they both bargained. Such a compromise may be attained by applying the doctrine of constructive exhaustion.

The doctrine of constructive exhaustion, which is also known as the offset rule,[10] effectively balances an insured's interest in restitution and an insurer's interest in indemnification.[11] In short, constructive exhaustion treats an insured who has settled with a tortfeasor's insurer for less than full policy limits as if he/she had actually received the full policy limits.

10. Although the vast majority of the courts considering this theory refer to it as the "offset rule" rather than the "doctrine of constructive exhaustion," we adopt the latter phraseology as it more accurately describes the construction we are applying to the exhaustion clause at issue herein. See, e.g., RLI Ins. Co. v. Superior Court of Ventura County, 2004 WL 1171649 (Cal.Ct.App. May 26, 2004) (employing "constructive exhaustion" terminology); Curran v. Progressive Northwestern Ins. Co., 29 P.3d 829 (Alaska 2001) (same); Irvin E. Schermer & William Schermer, Automobile Liability Insurance 3d § 62:4 (Supp.2004) (same).

11. It is important to note that we previously have briefly considered, and rejected, the doctrine of constructive exhaustion in the factually distinguishable case of Castle v. Williamson, 192 W.Va. 641, 453 S.E.2d 624 (1994). Unlike the case sub judice, Castle involved an injured guest passenger who sought UIM benefits from her driver's policy of motor vehicle insurance after she had received liability coverage benefits thereunder and settled with the third-party tortfeasor's liability insurance carrier for less than its full policy limits. In rejecting the doctrine of constructive exhaustion, we found that the plain language of the exhaus-

The objective of the exhaustion clause in the underinsured motorist insurance policy is to absolve the insurer from liability for any amounts which are below the stated limits of the underinsured tortfeasor's policy. This goal can be satisfied by allowing recovery only for those damages in excess of the tortfeasor's policy limits.

We hold that the injured party who settles with a tortfeasor's liability carrier shall be assumed to have received the policy limits of the tortfeasor's liability policy. Settlement by the injured party with the liability carrier is acknowledgment that the policy has been exhausted. Consequently, the injured party may only recover the difference between the liability policy limit and the damages suffered, subject to the underinsured motorist policy limits....

This holding serves to prevent needless complication of the settlement process. If the underinsured motorist carrier is liable for any gap in coverage caused by the settlement between the injured party and the tortfeasor's liability carrier, the underinsured motorist carrier will have a strong interest in the settlement between the injured party and the tortfeasor's liability carrier. At some point, the interests of the underinsured motorist carrier and the injured party may conflict, resulting in dis-

tion clause at issue therein precluded further consideration of the matter. Castle, 192 W.Va. at 647 n. 7, 453 S.E.2d at 630 n. 7. See also Syl. pt. 2, Castle, 192 W.Va. 641, 453 S.E.2d 624 ("Where a guest passenger is injured by the concurrent negligence of her host driver and a third party, the guest passenger may not recover under the host driver's underinsured motorist insurance if the host driver's underinsured motorist policy contains clear and unambiguous language which requires the exhaustion of applicable liability coverage before the underinsured motorist coverage is activated and the guest passenger fails to obtain the full amount of the liability limits from the third-party tortfeasor's carrier."). By contrast, the parties in the instant proceeding who are seeking to collect UIM benefits are the insureds, themselves, who purchased the policies providing such benefits. As the named insureds and direct beneficiaries of the policies in question are the parties who are also seeking to recover UIM benefits in the instant proceeding, it goes without saying that the Castle case is both legally and factually distinguishable from the case sub judice.

putes during or after the settlement process. In holding that the injured party is assumed to have settled for the full amount of liability coverage, this particular type of counterproductive dispute should be avoided. By allowing full credit of the tortfeasor's policy limit, the prejudice to the insurer is minimized.

. The insured should have the right to accept what he or she considers the best settlement available against the tortfeasor without relinquishing underinsurance protection. The insured would still be required to prove his or her claim against the insurer including proof of the amount of the insured's loss that exceeded the tortfeasor's liability insurance coverage.

*In re Rucker,* 442 N.W.2d 113, 116–17 (Iowa 1989).

▬▬▬ Stated otherwise, under this doctrine, the full policy limits of the applicable liability coverages are attributed to the insured in order to both promote the settlement of disputed cases and fulfill the requirement that the insured exhaust all applicable policies of insurance before he/she may recover UIM benefits under his/her own motor vehicle insurance policy. As is the case with the recovery of UIM benefits in more traditional contexts, however, constructive exhaustion does not provide a windfall recovery to the injured insured. Instead, constructive exhaustion operates to enable an injured insured to recover UIM benefits only when his/her damages are greater than the total of all policies of insurance that apply to the accident in question. Moreover, constructive exhaustion actually facilitates an insured's recovery of UIM benefits because whether or not the insured actually receives full policy limits from the tortfeasor, he/she may nevertheless recover UIM benefits when he/she has incurred damages that exceed the total of all applicable liability coverages. Thus, under constructive exhaustion,

an injured insured satisfies the "exhaustion" requirement in the underinsured motorist provision of his liability insurance policy when he receives from the underinsured tortfeasor's insurance carrier a commitment to pay an amount in settlement, the injured party retaining the right to

proceed against his underinsured motorist insurance carrier only for those amounts in excess of the tortfeasor's policy limits. The exhaustion clause must be construed as it was intended, *i.e.,* a threshold requirement and not a barrier to underinsured motorist insurance coverage.

*Bogan v. Progressive Cas. Ins. Co.,* 36 Ohio St.3d 22, 28, 521 N.E.2d 447, 453 (1988), *overruled on other grounds by Ferrando v. Auto–Owners Mut. Ins. Co.,* 98 Ohio St.3d 186, 781 N.E.2d 927 (2002), *review denied,* 98 Ohio St.3d 1463, 783 N.E.2d 521 (2003) (unpublished table decision).

Finally, constructive exhaustion promotes settlements and furthers the goal of judicial economy.

[T]his interpretation ... is consistent with traditional notions of judicial economy. There is no reason to require payment of full policy limits of available liability coverage as a precondition to UIM benefits. Such a requirement does not benefit the UIM carrier, as long as it is given a credit for the liability limits which were available. There may be many reasons settlement for less than limits is advantageous. As recognized by other courts which have analyzed this issue, they include: (a) the difficulty of ascertaining the exact amount of settlement in some structured agreements, such as those which include future medical benefits contingent upon surgery or other medical need; (b) the uncertainty of recovery, and the costs associated with continuing litigation; and (c) the health or other current necessities of the insured or the at-fault driver making immediate compromise propitious. These reasons nourish settlement, consistent with judicial economy.

*Cobb v. Benjamin,* 325 S.C. 573, 588, 482 S.E.2d 589, 596–97 (Ct.App.1997) (footnote omitted).

▬▬▬ Finding this approach to be the most equitable balance of the insured's and insurer's competing interests in cases such as the one presently before us, we hold that the doctrine of constructive exhaustion allows an injured insured to collect underinsured motorist benefits under his/her own policy of motor vehicle insurance for damages that exceed the available limits of a tortfeasor's

liability policy when (1) the injured insured's underinsured motorist coverage requires exhaustion of a tortfeasor's applicable liability limits as a prerequisite to his/her recovery of underinsured motorist benefits; (2) the injured insured settles with the tortfeasor's insurer for less than the tortfeasor's full liability limits that are available to the insured, but is treated as having received said full liability limits for purposes of recovering underinsured motorist benefits under his/her own policy of insurance; and (3) the injured insured's recovery of underinsured motorist benefits is limited to those damages that exceed the amount of the tortfeasor's full liability limits available to the insured.[12]

Applying this holding to the facts of the instant proceeding we find reaches the most equitable resolution by balancing the parties' respective interests and upholding the spirit and intent of both the policy language at issue herein and the statutory and case law governing the law of underinsurance. Accordingly, we conclude that Horace Mann was not entitled to summary judgment as a matter of law, and, thus, reverse the circuit

court's contrary ruling. We further remand this case to the circuit court for further proceedings consistent with this opinion.

## IV.

## CONCLUSION

For the foregoing reasons, the December 27, 2002, decision of the Fayette County Circuit Court is reversed, and this case is remanded for further proceedings consistent with this opinion.

Reversed and Remanded.

Chief Justice MAYNARD dissents and reserves the right to file a dissenting opinion.

MAYNARD, Chief Justice, dissenting.

I would affirm the ruling of the circuit court that Horace Mann was not obligated to pay UIM benefits to Mr. Adkins because he did not, in settling his underlying claim, exhaust the available limits of liability coverage.

---

12. This position is consistent with a majority of other courts that have examined exhaustion clauses in policies of motor vehicle insurance. *See, e.g., Omni Ins. Co. v. Foreman,* 802 So.2d 195 (Ala.2001); *Country Mut. Ins. Co. v. Fonk,* 198 Ariz. 167, 7 P.3d 973 (2000); *New Hampshire Ins. Co. v. Knight,* 506 So.2d 75 (Fla.Dist. Ct.App.1987); *Taylor v. Government Employees Ins. Co.,* 90 Hawai'i 302, 978 P.2d 740 (1999); *In re Rucker,* 442 N.W.2d 113 (Iowa 1989); *Metcalf v. State Farm Mut. Auto. Ins. Co.,* 944 S.W.2d 151 (Ky.Ct.App.1997); *Aetna Cas. & Sur. Co. v. Faris,* 27 Mass.App.Ct. 194, 536 N.E.2d 1097 (1989); *Linebaugh v. Farm Bur. Mut. Ins. Co.,* 224 Mich.App. 494, 569 N.W.2d 648 (1997); *Schmidt v. Clothier,* 338 N.W.2d 256 (Minn. 1983), *superseded by statute as stated in Onasch v. Auto-Owners Ins. Co.,* 444 N.W.2d 587 (Minn.Ct. App.1989); *Augustine v. Simonson,* 283 Mont. 259, 940 P.2d 116 (1997); *Barrett v. New Jersey Mfrs. Ins. Co.,* 295 N.J.Super. 613, 685 A.2d 975 (1996); *Bogan v. Progressive Cas. Ins. Co.,* 36 Ohio St.3d 22, 521 N.E.2d 447 (1988), *overruled on other grounds by Ferrando v. Auto-Owners Mut. Ins. Co.,* 98 Ohio St.3d 186, 781 N.E.2d 927 (2002), *review denied,* 98 Ohio St.3d 1463, 783 N.E.2d 521 (2003) (unpublished table decision); *Buzzard v. Farmers Ins. Co., Inc.,* 824 P.2d 1105 (Okla.1991); *Vega v. Farmers Ins. Co. of Oregon,* 323 Or. 291, 918 P.2d 95 (1996), *superseded by statute on other grounds as stated in Hamm v. Allied Mut. Ins. Co.,* 612 N.W.2d 775 (Iowa 2000); *Sorber v. American Motorists Ins. Co.,* 451 Pa.Super. 507, 680 A.2d 881 (1996); *LeFranc v.*

*Amica Mut. Ins. Co.,* 594 A.2d 382 (R.I.1991), *superseded by statute as stated in Sunderland v. Allstate Ins. Co.,* 717 A.2d 53 (R.I.1998); *Cobb v. Benjamin,* 325 S.C. 573, 482 S.E.2d 589 (Ct.App. 1997); *Leal v. Northwestern Nat'l County Mut. Ins. Co.,* 846 S.W.2d 576 (Tex.Ct.App.1993); *Hamilton v. Farmers Ins. Co. of Washington,* 107 Wash.2d 721, 733 P.2d 213 (1987). Despite the fact that constructive exhaustion is the majority view, a substantial number of states have, nevertheless, declined to adopt this doctrine. *See, e.g., Curran v. Progressive Northwestern Ins. Co.,* 29 P.3d 829 (Alaska 2001); *Birchfield v. Nationwide Ins.,* 317 Ark. 38, 875 S.W.2d 502 (1994); *Hartford Fire Ins. Co. v. Macri,* 4 Cal.4th 318, 14 Cal.Rptr.2d 813, 842 P.2d 112 (1992); *Freeman v. State Farm Mut. Auto. Ins. Co.,* 946 P.2d 584 (Colo.Ct.App.1997); *Continental Ins. Co. v. Cebe-Habersky,* 214 Conn. 209, 571 A.2d 104 (1990); *Daniels v. Johnson,* 270 Ga. 289, 509 S.E.2d 41 (1998); *Robinette By and Through McMahon v. American Liberty Ins. Co.,* 720 F.Supp. 577 (S.D.Miss.1989), *aff'd,* 896 F.2d 552 (5th Cir. 1990) (unpublished table decision); *State ex rel. Shelton v. Mummert,* 879 S.W.2d 525 (Mo.1994); *Ploen v. Union Ins. Co.,* 253 Neb. 867, 573 N.W.2d 436 (1998); *Federal Ins. Co. v. Watnick,* 80 N.Y.2d 539, 592 N.Y.S.2d 624, 607 N.E.2d 771 (1992); *McCrary ex rel. McCrary v. Byrd,* 148 N.C.App. 630, 559 S.E.2d 821 (2002), *review and cert. denied,* 356 N.C. 674, 577 S.E.2d 625 (2003); *Danbeck v. American Family Mut. Ins. Co.,* 245 Wis.2d 186, 629 N.W.2d 150 (2001).

This Court has held that "[w]here provisions in an insurance policy are plain and unambiguous and where such provisions are not contrary to a statute, regulation, or public policy, the provisions will be applied and not construed." Syllabus, *Tynes v. Supreme Life Ins. Company of America*, 158 W.Va. 188, 209 S.E.2d 567 (1974). The majority opinion acknowledges that "the exhaustion clause incorporated by Horace Mann into the Adkins' policies of insurance appears to be facially capable of but one construction: that all applicable policies of liability coverage must be exhausted before an insured may recover UIM benefits thereunder." I would have ended my analysis there and upheld the policy language. Unlike the majority opinion, I simply do not believe this language violates public policy, and I see no need to adopt a new-fangled and confusing legal doctrine to get around the policy's plain language.

Accordingly, I respectfully dissent.